IN RE FORECLOSURE OF C AND M INVESTMENTS

[123 N.C. App. 52 (1996)]

IN THE MATTER OF: The Foreclosure of a Deed of Trust executed by C and M Investments of High Point, Inc. to Raymond D. Thomas, Trustee recorded in Book 3846 at Page 1446 Guilford County Registry

No. COA95-1052

(Filed 2 July 1996)

**1. Mortgages and Deeds of Trust § 46 (NCI4th)— failure to comply strictly with conditions of release—release allowed—release credits not applied to principal amount— default**

A purchaser who defaulted on payments under a promissory note secured by a purchase money deed of trust had a right to a release of a 28.68-acre tract from the deed of trust, even if it did not comply with the conditions precedent set forth in the release agreement, where the purchaser made principal payments sufficient for a release of this tract prior to its default, since to allow the seller to retain the principal payments made by the purchaser as per the requirements of the note and to allow the seller to foreclose on the property that the purchaser had paid to have released would amount to a windfall; the only condition with which the purchaser did not comply was setting forth the property to be released on a recorded plat; even though the deed of trust stated that default would occur if improper payments were made, the seller continued to accept payments from the purchaser which were less than the required principal payment; and it was the seller's duty to initiate the foreclosure action once default occurred.

**Am Jur 2d, Mortgages §§ 1045 et seq., 1128 et seq.**

**Construction of provision in real-estate mortgage, land contract, or other security instrument for release of separate parcels of land as payments are made. 41 ALR3d 7.**

**2. Mortgages and Deeds of Trust § 51 (NCI4th)— property release credit not payment—default**

A purchaser was required to make a principal payment due under a promissory note secured by a purchase money deed of trust even though the purchaser had a property release credit in excess of the principal payment then due where the note and release agreement provided that release credits were not to be applied toward principal payments due under the note.

IN RE FORECLOSURE OF C AND M INVESTMENTS

[123 N.C. App. 52 (1996)]

Therefore, the purchaser's failure to make the required principal payment constituted a default under the note.

**Am Jur 2d, Mortgages §§ 417 et seq.**

Appeal by petitioner from order entered 3 May 1995 by Judge W. Douglas Albright in Guilford County Superior Court. Heard in the Court of Appeals 20 May 1996.

On 13 November 1990, C & M Investments of High Point, Inc., (C & M), purchased from Walker Heirs, Inc. 280 acres of land in Guilford County. That same day the parties also entered into a release agreement. A purchase price of $1,258,740.00 was paid, $338,685.00 in cash and the rest financed by the seller through a promissory note in the amount of $920,055.00. The promissory note is secured by the purchase money deed of trust which is the subject of this action. Shortly after the purchase, respondent C & M transferred the subject property to respondent Browns Summit Development Corporation, (BSDC).

The release agreement between the parties was incorporated by reference into the deed of trust. The agreement permitted BSDC to seek a release of property from the deed of trust once BSDC complied with certain conditions set forth in the note and the release agreement.

In consideration of the down payment of $338,685.00, C & M was entitled to a release of certain lots totaling 61.7 acres, contingent upon compliance with the conditions in the release agreement. The initial release did not occur until 4 November 1991 when 52.267 acres rather than 61.7 acres were released, with the remaining 9.43 acres to be released at a later time. This left C & M with a release credit worth $42,448.50. The parties agreed by letter that BSDC was entitled to a release of the 9.43 acres on any lot in Phase II of the project after Phase II had been platted and as long as the conditions precedent to the release set forth in the original release agreement were met. On 28 October 1993 BSDC decided that they wanted a release of 28.68 acres based on the existing 9.43 credit and they would provide a cashier's check in the amount of $10,750.50 to make up for the amount needed to release 28.68 acres according to the release agreement. BSDC requested release of the 28.68 acres on 28 October 1993 and 28 April 1994 and were denied both times because they had not complied with the conditions precedent in the release agreement. BSDC then failed to make the 1 November 1993 semi-annual payment

due under the note. Raymond D. Thomas, as trustee notified BSDC of their default under the note 15 November 1993. The letter of credit posted by BSDC, for the completion of the roads, with Guilford County as the beneficiary, was up for renewal 27 November 1993. The Guilford County Planning Department refused to renew the letter of credit and instead "called" the letter of credit. The Guilford County Planning Department received the full amount of the letter of credit in cash and has since kept it on deposit. On 22 April 1994 BSDC submitted a drawing (not a plat) of the 28.68 acres for the purpose of being recorded with the County Register of Deeds.

The Honorable Sharon R. Williams, Assistant Clerk of Superior Court of Guilford County, entered an order 21 September 1994 authorizing the Trustee to conduct a foreclosure sale. BSDC gave notice of appeal to the Superior Court of Guilford County and the matter came on for hearing before the Honorable W. Douglas Albright 10 April 1995. Judge Albright entered an order and judgment on 3 May 1995 reversing the decision of the Clerk and denying the petition for foreclosure. From this order Walker Heirs, Inc. appeals.

*Adams Kleemeier Hagan Hannah & Fouts, by M. Jay DeVaney and David S. Pokela, for petitioner appellant.*

*Elrod Lawing & Sharpless, P.A., by Frederick K. Sharpless, for respondent appellee.*

ARNOLD, Chief Judge.

[1] Petitioner first argues that BSDC had no right to a release of the 28.68 acre tract in October of 1993 because it did not comply with the conditions precedent set forth in the release agreement. We disagree.

The applicable standard of review on appeal where, as here, the trial court sits without a jury, is whether competent evidence exists to support its findings of fact and whether the conclusions reached were proper in light of the findings. *In re Norris*, 65 N.C. App. 269, 275, 310 S.E.2d 25, 29 (1983), *review denied*, 310 N.C. 744, 315 S.E.2d 703 (1984).

A foreclosure sale pursuant to a power of sale contained in a deed of trust will be authorized only if the existence of the following four elements is found:

IN RE FORECLOSURE OF C AND M INVESTMENTS

[123 N.C. App. 52 (1996)]

(i) valid debt of which the party seeking to foreclose is the holder, (ii) default, (iii) right to foreclose under the instrument, and (iv) notice to those entitled to such. . . .

N.C. Gen. Stat. § 45-21.16(d) (1991). Foreclosure under a power of sale is not favored in the law, and its exercise " 'will be watched with jealousy.' " *In Re Foreclosure of Goforth Properties, Inc.*, 334 N.C. 369, 375, 432 S.E.2d 855, 859 (quoting *Spain v. Hines*, 214 N.C. 432, 435, 200 S.E. 25, 28 (1938)). Thus, the issue presented in the present case is, what property is encumbered by the deed of trust in light of the release agreement between the parties and, therefore; what property is eligible for foreclosure due to default under the note.

The release agreement incorporated in the original deed of trust in pertinent part appears as follows:

WHEREAS, WALKER AND DEBTOR desire to enter into an agreement in regard to the release of the REAL ESTATE from the terms and conditions of the DEED OF TRUST as hereinafter set forth; and

. . . .

1. CONDITION PRECEDENT TO RELEASE

It is understood and agreed that the DEBTOR shall not be entitled to any release of any of the REAL ESTATE until that part which is sought to be released is set forth on a duly recorded plat as a designated lot thereon, and said plat is in conformity with the ORDINANCE and approved by the appropriate agency in Guilford County which shall administer the ORDINANCE. It is further agreed that no release of the REAL ESTATE will be made until any streets or roads on any recorded plat shall have been built or bonded to be built in accordance with the ORDINANCE and the rules and regulations of the Department of Transportation of North Carolina, if the latter approval be required. No partial platted lot shall be released, but only a total platted lot. In addition, any remaining portion of the REAL ESTATE not released shall have access to public roads or streets.

2. RELEASE FOR DOWNPAYMENT

At closing of the transaction, the DEBTOR paid to Walker a down payment of $306,685.00. In consideration of said downpayment, the DEBTOR shall be entitled to a release from the DEED OF TRUST Lots 2, 3, 6, 7, 26, 27, 28, 29 and 30 of Sec. 1 or desig-

nated lots with comparable acreage in Sect. 1 without further payment. However, such release shall be subject to the provision of Paragraph 1 above, and further the entire area designated as Sec. 1 on the SUBDIVISION shall have been recorded as a subdivision plat in the Office of the Register of Deeds of the Guilford County.

. . . .

4. OTHER RELEASES

As to all other lots set forth on the SUBDIVISION, and subject to the conditions herein set forth, a release payment of $4,500.00 per acre shall be paid. There will be no deduction for that REAL ESTATE which lies within the Greenway as set forth on the SUBDIVISION.

5. APPLICATION OF RELEASE PAYMENTS

All payments herein made for releases shall be applied toward the next payment of principal and interest due on the NOTE, and if the amount of the same shall be equal to or greater than the next semi-annual payment called for in the NOTE when added to any prior release payment being applied to the same semi-annual payment, then said semi-annual payment will have been considered paid. Any excess shall be applied to next semi-annual payment.

" 'In general, a condition creates no right or duty but is merely a limiting or modifying factor in a contract.' " *Goforth* at 375, 432 S.E.2d at 859 (quoting 17A Am. Jur. 2d *Contracts* § 468 (1991)). "Breach or non-occurrence of a condition prevents the promisee from acquiring a right, or deprives him of one, but subjects him to no liability. . . ." *Construction Co. v. Crain and Denbo, Inc.*, 256 N.C. 110, 117, 123 S.E.2d 590, 595 (1962). A condition precedent is an event which must occur before a contractual right arises, such as the right to immediate performance. *Farmers Bank v. Brown Distributors*, 307 N.C. 342, 350, 298 S.E.2d 357, 362 (1983). "Conditions precedent are not favored by the law and a provision will not be construed as such in the absence of language clearly requiring such construction." *Cox v. Funk*, 42 N.C. App. 32, 35, 255 S.E.2d 600, 601 (1979) (citing *Price v. Horn*, 30 N.C. App. 10, 17, 226 S.E.2d 165, *review denied*, 290 N.C. 663, 228 S.E.2d 450 (1976)).

Before any release of property could occur, BSDC had to (1) have the part of the property sought to be released set forth on a duly

**IN RE FORECLOSURE OF C AND M INVESTMENTS**

[123 N.C. App. 52 (1996)]

recorded plat as a designated lot thereon; (2) the plat was to be in conformity with the ORDINANCE and approved by the appropriate agency in Guilford County which administers the ORDINANCE; (3) no release would be made until any streets or roads on any recorded plat had been built or had been bonded to be built in accordance with the ORDINANCE and the rules and regulations of the Department of Transportation of North Carolina, if the latter approval was required; (4) no partially platted lot would be released and (5) any remaining portion of the real estate not released was to have access to public roads or streets. Further, according to the promissory note, principal payments were to be made in 11 semi-annual installments of seventy-six thousand six hundred seventy-one and 26/100 dollars ($76,671.26) plus accrued interest commencing May 1, 1991 and continuing on the first day of November, 1991 and continuing on the first day of each May and November thereafter until November 1, 1996 when the balance of principal and accrued interest would be due and payable in full. Payments made would be applied towards the next semi-annual payment and any excess payment would be applied towards the next semi-annual payment.

The semi-annual payments made under the note and any excess payments served a dual purpose. First, payments were applied towards the amount due under the note. Secondly, they were applied towards the release of the encumbered property. Acreage encumbered by the deed of trust was to be released at the rate of $4500.00 per acre. So, if for example a payment of $76,761.26 was made, then $76,761.26 would be applied towards the principal payment and 17.06 acres ($76,761.26 / $4500.00 = 17.06 acres) would be released. When BSDC made a payment they also had to make a demand for release of property if they had satisfied the conditions precedent to release. If no demand was made, then BSDC accumulated a "release credit." Release credits went up as principal payments were made and they decreased as property was actually released. The total purchase price of the property was $1,258,740.00, of which $338,685.00 was paid in cash at closing by C & M to Walker. The remainder of the purchase price was financed by the seller through a purchase money promissory note executed 13 November 1990 by C & M in the original amount of $920,055.00.

After the initial down payment, Walker was to release 61.7 acres. However, only 52.267 acres were actually released. In a letter dated 4 August 1993, the parties agreed that BSDC could use their credit of 9.433 acres and apply it towards a release of acreage on any lot in

Phase II after Phase II had been platted and the other conditions had been met. Then on 28 October 1993, BSDC decided that they wanted a release of 28.68 acres based on the existing credit of 9.433 acres ($42,448.50) and the payment made on 9/17/93 ($76,761.26). However, they were approximately $10,750.50 short of the amount needed to release the 28.68 acres. BSDC agreed to provide a cashier's check for the additional amount in order to finalize the release.

At the time BSDC requested the release, a plat of the 28.68 acres had not been recorded. Instead, DeLacy M. Wyman, employed by the Guilford County Planning Department, testified that BSDC had submitted a drawing, approved by the Guilford County ordinance, for the purpose of being recorded with the County Register of Deeds. The roads on the drawing were not constructed nor had they been approved by the North Carolina Department of Transportation. He also testified that a letter of credit for the construction of the roads was in place but was called on 29 November 1993. The letter of credit in the amount of $166,00.00 was based on a set of construction plans prepared by the developer of the property, but it was discovered that the plans were not adequate because the estimate was based on a residential street, rather than an industrial street. The plans were rejected because the city of Greensboro decided they were not going to permit any more hookups to city water and sewer from that part of the county on this project. Mr. Wyman testified that he had correspondence indicating that the public water could be extended to the property and that sewer could also be extended. In order to have the sewer extended other property owners would have to agree to allow sewer to extend through their property and no agreement had been reached on that issue. If the sewer were not extended, lots would have to be larger and would be served by septic tanks, which would preclude certain industrial uses of the property. The County refused to renew the letter of credit and called it 29 November 1993. The letter of credit was converted into cash and the County still has the cash on deposit. BSDC made requests for the release of the 28.68 acres in October of 1993 and April of 1994. In October BSDC was denied release because they had not complied with the condition of recording a plat of the tract prior to seeking a release. In April BSDC was denied release because they had not made a principal payment in November of 1993, and because the roads to be built were no longer bonded.

The facts of *In Re Foreclosure of a Deed of Trust of Michael Weinman Assoc.*, 333 N.C. 221, 424 S.E.2d 385 (1993), are similar

to those of the instant case. Weinman contracted with North Mecklenburg Associates to purchase 402.67 acres for approximately $3500 per acre. *Id.* at 223, 424 S.E.2d at 386. The purchase price was to be adjusted based upon a survey to determine the actual acreage. *Id.* In the contract Weinman had the option of electing to have North Mecklenburg finance a portion of the property, Mecklenburg would then permit Weinman to make a payment of twenty-five percent of the final purchase price at the time of closing, and three successive payments plus accumulated interest at the time of each such payment. *Id.* at 224, 424 S.E.2d at 386. The contract further provided:

> Should this option be exercised, Buyer agrees to prepare a land use map showing the property being divided into four parcels with equal road frontage.

> One parcel representing approximately 25% of the land on one end of the property would be released at closing, and additional contiguous parcels would be released at one year intervals as payments outlined above are made.

*Id.* Weinman elected to have Mecklenburg finance a portion of the property in accordance with these provisions of the contract. *Id.* At closing Weinman made a payment of $350,139.13, representing twenty-five percent of the purchase price, and executed and delivered to Mecklenburg a promissory note in the amount of $1,050,417.37 for the balance of the purchase money, together with a purchase money deed of trust for the property securing the promissory note. *Id.* Weinman proceeded to make full payment on Tract 2 but did not have the requisite survey work completed. *Id.* at 225, 424 S.E.2d at 387. The Supreme Court held that Weinman's default on Tracts 3 and 4 did not authorize North Mecklenburg to refuse to release Tract 2 and to include Tract 2 in the foreclosure. *Id.* at 229, 424 S.E.2d at 389.

While the facts are slightly different in the present case from those in *Weinman*, to allow the appellant to retain the principal payments paid by BSDC as per the requirements of the note, and to allow them to foreclose on the property that BSDC has paid to have released would amount to a windfall. While BSDC did not strictly comply with the conditions precedent in the release agreement, public policy dictates that appellant should not be allowed to receive a double recovery. The trial court found that the roads to be built had been properly bonded, thus the only condition BSDC had not complied with was the requirement of setting forth the property to be released on a recorded plat. Even though the deed of trust states that

IN RE FORECLOSURE OF C AND M INVESTMENTS

[123 N.C. App. 52 (1996)]

default will occur if improper payments are made, appellant continued to accept payments from BSDC that were less than the required principal payment. It was appellant's duty to initiate the foreclosure action once default occurred. Therefore, we find that BSDC is entitled to have such property released from the deed of trust as was paid for prior to their default 1 November 1993. The payment history between the parties indicates that BSDC is entitled to a release of 28.68 acres from the deed of trust. There is competent evidence in the record to support the trial court's conclusion that BSDC is. entitled to a release of the 28.68 acres.

[2] Appellant's second assignment of error is that the trial court erred in finding and concluding that BSDC did not have to make the November 1993 payment because of a then existing release credit. We agree.

The trial court found and concluded the following:

4. Because respondent had paid $119,209.76 for releases of property in excess of the property that had been released, respondent's failure to make the November 1, 1993 payment on the note did not constitute default.

6. Respondent's failure to make the payment of May 1, 1994, on or before May 10, 1994, constituted a default under the promissory note.

According to the release agreement and the note, release credits were not to be applied towards principal payments due under the note. The trial court erroneously concluded that BSDC was entitled to apply release credits towards the November principal payment, and that default under the note occurred in May of 1994. We find that BSDC was required to make a principal payment in November of 1993, and BSDC's failure to make the November payment constituted default under the note. We therefore affirm the conclusion and finding of the trial court as modified.

Affirmed.

Judges JOHN and McGEE concur.