AMERICAN CONTINENTAL INSURANCE COMPANY, PLAINTIFF-APPELLANT, CROSS-APPELLEE v. PHICO INSURANCE COMPANY, DEFENDANT-APPELLEE, CROSS-APPELLANT

No. COA98-728

(Filed 2 March 1999)

1. **Insurance— coverage—claims-made policy—definition of claim**

In a declaratory judgment action to determine whether a claims-made policy provided coverage to a hospital where a Notice of Claim was received two days before the coverage was to expire and the insurance company (PHICO) contended that there was no claim, there was compelling evidence that the hospital's risk manager reasonably anticipated an express demand for damages and that an effective notice of claim as defined by the insurance policy was therefore filed prior to the expiration of coverage.

2. **Insurance— claims-made hospital insurance—timely notice—duty to defend—material prejudice**

There was no error in a declaratory judgment action which determined that a claims-made policy issued to a hospital provided coverage of a particular case where the insurance company contended that there was no duty to defend because of failure to provide timely notice. It is apparent that the insured became aware of the possible fault only when an attorney sought the

patient's medical records and, under those circumstances, it cannot be said that a delay of less than six weeks amounted to a purposeful failure to notify the insurer. Moreover, although the insurance company argued that it was prejudiced because the passage of time between the injury and the institution of the suit, any prejudice would have arisen from the thirty-eight day delay between notification of the claim and notice to the insurance company and no such prejudice was established.

### 3. Insurance— coverage—overlapping—mere volunteer

An insurance policy provided to a hospital by ACIC did not provide coverage for a claim and ACIC was entitled to reimbursement from another insurance company, PHICO, where PHICO denied coverage and ACIC settled the claim, the express language of ACIC's policy precluded overlapping coverage, and ACIC was not acting as a mere volunteer in that it had its own interest to protect. The trial court erred by finding that the costs of defense and settlement should be borne equally by ACIC and PHICO.

Judge HORTON dissenting.

Appeal by plaintiff and cross-appeal by defendant from judgment entered 20 April 1998 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 28 January 1999.

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Michael E. Weddington and James Y. Kerr, II, for plaintiff-appellant, cross-appellee.*

*Cranfill, Sumner & Hartzog, L.L.P., by Richard T. Boyette and Kari Russwurm Johnson, for defendant-appellee, cross-appellant.*

EDMUNDS, Judge.

Defendant PHICO Insurance Company (PHICO) provided professional liability insurance coverage to Caldwell Memorial Hospital (Caldwell) in Lenoir, North Carolina from 1988 to 1 October 1994. PHICO's policy was a "claims-made" policy, which obligated PHICO to assume coverage when a claim was asserted against Caldwell during the policy period, and Caldwell in turn reported the claim to PHICO. Effective 1 October 1994, Caldwell terminated its relationship with PHICO to obtain a more favorable premium rate. Caldwell's new

policy (also a "claims-made" policy) was with plaintiff American Continental Insurance Company (ACIC) and contained a provision whereby ACIC would provide retroactive coverage for prior acts occurring as far back as 1 October 1975, so long as those acts were first reported during the policy period and were not otherwise excluded.

In October 1991, William T. Watson was born at Caldwell. He experienced complications and was transferred to a children's hospital. In March 1993, Watson's parents requested his medical records from Caldwell for the purpose of genetic testing. On 19 August 1994, an attorney representing the Watson family requested the child's medical records from Caldwell. On 26 September 1994, Caldwell's risk manager, Marie Chapman, sent a Notice of Claim in regard to the Watson matter to PHICO. PHICO received this notice on 28 September 1994, two days before its coverage of Caldwell was to expire, and declined to accept coverage for the claim. In a 30 September 1994 letter to Caldwell, PHICO stated that the notice did "not comply with PHICO's general reporting guidelines as contained and defined in your Policy of Insurance."

On 7 October 1994, the Watson family filed suit against the hospital for medical negligence. Upon receipt of the summons and complaint, Caldwell forwarded the suit papers to PHICO and asked for reconsideration of its earlier denial of coverage. On 17 October 1994, PHICO reiterated its denial of coverage based upon failure to meet the policy's reporting requirements. Caldwell then requested that ACIC undertake the defense and indemnification of the hospital. ACIC did so and settled the lawsuit in July 1996 for $30,000.00, incurring defense costs totaling $24,863.48.

On 10 August 1995, Caldwell filed a complaint against PHICO, seeking a declaratory judgment regarding PHICO's responsibility under its claims-made policy. After filing its answer, PHICO filed a motion to dismiss on 11 June 1997, claiming (1) the trial court lacked jurisdiction because no controversy existed between Caldwell and PHICO and (2) all "persons" potentially affected were not named as parties to the suit. On 30 July 1997, the trial court granted PHICO's motion. ACIC was thereafter substituted as the real party in interest, and on 26 February 1998, ACIC amended the original complaint to state that it was the new liability insurance carrier for Caldwell and had settled the claim against Caldwell. On 9 March 1998, PHICO answered the amended complaint. After a non-jury trial on the merits, the trial judge entered judgment on 20 April 1998, concluding that

both the PHICO policy and the ACIC policy covered the disputed claim and that, therefore, the costs of defense and settlement should be borne equally by PHICO and ACIC. Both parties appeal.

[1] "The applicable standard of review on appeal where, as here, the trial court sits without a jury, is whether competent evidence exists to support its findings of fact and whether the conclusions reached were proper in light of the findings." *In re Foreclosure of C and M Investments*, 123 N.C. App. 52, 54, 472 S.E.2d 341, 342 (1996) (citations omitted), *aff'd in part, rev'd in part*, 346 N.C. 127, 484 S.E.2d 546 (1997). The trial court here first found that PHICO's policy provided coverage to the hospital. We agree. This policy reads in pertinent part:

> PHICO will pay on behalf of the **insured** all sums which the **insured** shall be legally obligated to pay as damages because of **bodily injury** or **property damage** caused by a **medical incident** which occurs on or after the Initial Effective Date stated in the Declarations and for which **claim** is reported to PHICO during the **policy period**.

Within this policy, a "claim" is defined as:

> (1) an express demand for damages to which this insurance applies, arising from an injury allegedly caused by the **insured**; an express demand for damages shall be deemed to include a civil action in which damages to which this insurance applies are alleged and an arbitration proceeding to which the **insured** is required to submit by statute or court rule or to which the **insured** has submitted with PHICO's consent; or

> (2) an act or omission which the **insured** reasonably believes will result in an express demand for damages to which this insurance applies.

> A report of a **claim** to PHICO must comply with the requirements of Section VIII—Conditions, Condition 3, of this policy.

The condition to which this definition refers reads as follows:

> **3. Reporting Requirements; Assistance and Cooperation of Insured.**
>
> > (a) A **claim** shall be considered made when the **insured** has reported it to PHICO. A **claim** as defined in paragraph (1)

of its definition shall be reported immediately to PHICO. The **insured** shall immediately forward to PHICO every demand, notice, summons or other process the **insured** or the **insured's** representative receives. A **claim** as defined in paragraph (2) of its definition shall be reported as soon as practicable to PHICO.

. . . .

An event reported by the **insured** to PHICO as part of risk management or loss control services shall not be considered a report of a **claim**.

PHICO contends that the Watson claim is not a "claim" as defined by the policy language. It is apparent that no claim was made under the terms of subsection (1) of PHICO's definition of claim, because there was no "express demand for damages" until the Watsons filed suit on 7 October 1994, after the expiration of the policy. PHICO further argues that there was no claim under subsection (2) of the definition, relying upon the deposition testimony of Marie Chapman, Caldwell's risk manager. We disagree.

PHICO's policy set up three categories of reports that Caldwell could make. The first two were "claims," which were to be filed either when an actual demand for damages was made, or when the insured reasonably anticipated an express demand for damages. The third category covered reports made as part of risk management or loss control services. It is under this last category that PHICO contends the Watson matter falls, arguing that Caldwell did not have a "reasonable belief" that a demand for damages would be made, but rather was merely "cleaning house" prior to the expiration of its policy period with PHICO. Accordingly, PHICO stresses the belief and understanding of Ms. Chapman, Caldwell's risk manager, as set out in her deposition testimony. PHICO's reliance on her testimony is unavailing.

An examination of Ms. Chapman's deposition testimony demonstrates that her own definition of the term "claim" was more restrictive than the definition in PHICO's policy. She stated that, to her, a claim only existed when a suit had actually been filed. "[A] claim would be when I get that yellow piece of paper from the court. To me that's a claim or a lawsuit." When she was asked about this case, she used language not found in the policy.

Q. William T. Watson, when you filed this notice of claim on September 26, 1994, did you consider that to be a claim?

A. No.

Q. And what did you consider yourself to have been doing?

A. I considered it a precautionary notice.

Q. And why did you not consider it a claim at the time?

A. Because it hadn't been filed, to my knowledge, as a lawsuit.

Ms. Chapman's interpretation of the term "claim" is not controlling, however; rather the focus of our inquiry is on the more expansive definition of "claim" set out in the policy. *See Nationwide Mutual Ins. Co. v. Mabe*, 115 N.C. App. 193, 198, 444 S.E.2d 664, 667 (1994), *aff'd*, 342 N.C. 482, 467 S.E.2d 34 (1996). The policy sets up a subjective standard in subsection (2), under which a claim is deemed filed if the insured reasonably believes that an express demand for damages will be forthcoming. Therefore, we must view Ms. Chapman's actions to determine whether she, on behalf of the insured, had a reasonable belief that a suit would be filed in the Watson case. We find sufficient evidence of such a belief. She testified that an attorney's request for records was a "red flag" for her, indicating that "the incident might turn into a claim." PHICO encouraged Ms. Chapman to report potential suits, even if she, personally, did not define these reports as claims. She testified during deposition as follows:

A. My understanding from [Douglas Deitrich, Senior Malpractice Claim Specialist] and from my managers, claims managers [Nan Holland and Barbara Maly, risk management consultants], was you report anything that you think might turn into a claim.

. . . .

Q. When you say you reported them [in anticipation of a claim], what was your method of reporting these events?

A. The notice of claim.

Therefore, even if she did not perceive a report filed in anticipation of a suit as being a claim, she was instructed to be sure that PHICO was advised of these instances so that coverage would be available.

In her 13 October 1994 letter to PHICO's claim division, Ms. Chapman stated, "I had no idea that the enclosed case was being considered for litigation at that time, simply that the records had been

requested. I feel strongly that PHICO is responsible for defending this suit and request that you assist me in obtaining this service." When read along with her testimony that a request for hospital records by an attorney was a "red flag," this letter shows that while she had no knowledge of an upcoming suit when she sent notice, she nevertheless filed it understanding that PHICO's policy required it to defend appropriately-made claims. Additionally, because she held the position of risk manager for Caldwell, it would seem logical that if she were filing the Watson matter as a risk management/loss control report, she would have sent it to PHICO's risk management division, instead of its claims division.[1] These factors are all compelling evidence that Ms. Chapman reasonably anticipated an express demand for damages, and that an effective notice of claim, as defined in the insurance policy, was therefore filed prior to 1 October 1994.

[2] Next, PHICO contends that even if a claim had been made, PHICO still had no duty to defend because of Caldwell's failure to provide timely notice as required by the policy. Claims filed under subsection (2) of the definition had to "be reported as soon as practicable to PHICO." Despite PHICO's contention that notice should have been filed as soon as the baby showed distress, the hospital had no reason then to suspect that a lawsuit would arise. Ms. Chapman testified that transfers of newborns to another hospital were a weekly occurrence, and that the Watson child's condition was not unusual. Almost three years later the hospital received a request for medical records from the Watsons' attorney. Approximately five weeks thereafter, the hospital mailed its Notice of Claim to PHICO.

The issue of timely reporting has been addressed in *Great American Ins. Co. v. C. G. Tate Construction Co.*, 315 N.C. 714, 340 S.E.2d 743 (1986). Our Supreme Court there enumerated the steps to be taken when an insurer claims that notice was not given "as soon as practicable." The Court held that the requirement for timely notice is satisfied despite delay in notifying the insurer so long as (1) the delay was occasioned in good faith and (2) the insurer was not prejudiced. *See id.* at 719, 340 S.E.2d at 747. A court will find good faith unless (1)

---

1. We note that the method for filing risk management/loss control reports is not set out in the record, and it is possible that *all* reports, not just "claims," were sent to PHICO's claims division. The Notice of Claim form that Ms. Chapman was instructed to use did not call on her to distinguish what type of report she was filing, which suggests that if all reports were sent to the same destination, PHICO had the prerogative of deciding whether a report would be characterized as a claim (and therefore covered) or as a report to risk management (and not covered). In that case, PHICO cannot avoid coverage by its unilateral action in placing the filing in a particular category.

the insured was aware of the possible fault *and* (2) the insured "purposefully and knowingly fail[ed] to notify the insurer." *Id.* at 720, 340 S.E.2d at 747. Here, while PHICO contends that the claim accrued when the Watson child was born, and that the delay in reporting was therefore a matter of years, we note Ms. Chapman's testimony that the conditions of the child's birth and transfer to another hospital were, if not routine, at least commonplace. Under the facts before the trial court, it is apparent that the insured became aware of the possible fault only when an attorney sought the child's medical records, an event that was a "red flag" to Ms. Chapman. Under these circumstances, we cannot say that a delay of less than six weeks in notifying PHICO amounted to a purposeful failure to notify the insurer. In fact, the trial judge's finding that PHICO's policy afforded coverage necessarily implied a finding that the notice was timely given.

Once the insured proves that it acted in good faith, the burden shifts to the insurer to prove that its ability to investigate and defend the case was materially prejudiced by the delay. *See id.* at 718, 340 S.E.2d at 746 (quoting *Great American Insurance Company v. Tate Construction Company*, 303 N.C. 387, 399, 279 S.E.2d 769, 776 (1981)). Although PHICO argues that it has been prejudiced because of the passage of time between the birth and the institution of the suit, this contention is without merit. The evidence establishes that Caldwell only became aware of the potential for a suit when the medical records were requested. Before that event there were no grounds for a reasonable belief that a demand for damages would be made. Therefore, any prejudice would have arisen from the thirty-eight day delay between Caldwell's notification of the claim and Caldwell's notice to PHICO. No such prejudice has been established. This assignment of error is overruled.

[3] After determining that PHICO's policy provided coverage for the claim, we turn next to ACIC's policy. The trial court quoted this policy in its findings of fact and concluded as a matter of law that the ACIC policy provided coverage for the Watson claim. We disagree. The express language of ACIC's policy precludes overlapping coverage, and, therefore, we hold that the conclusion of law is not supported by the findings of fact. ACIC's policy reads in pertinent part:

WE will pay on YOUR behalf those sums which YOU shall become legally obligated to pay:

1. As damages because of INJURY to any person arising out of an OCCURRENCE resulting from a negligent act, error

or omission in rendering or failing to render PROFES-
SIONAL SERVICES on or after the Retroactive Date for
Coverage C stated in the Declarations, and for which claim
is first made against YOU and reported to US during this
POLICY PERIOD.

The retroactive date of the policy was 1 October 1975. However, the
policy also listed the following as one of its exclusions:

6. LIABILITY of the INSURED for damages resulting from an
injury, harm or loss if, prior to the INSURED'S first continuous
POLICY PERIOD with US, any claim has been made against
the INSURED by anyone for such damages or if the INSURED
could have reasonably foreseen that such injury, harm or loss
might result in a claim for such damages.

It is apparent that ACIC included this clause to prevent overlapping
coverage. Caldwell's valid claim to PHICO, filed no later than 28
September 1994, was made because Caldwell then reasonably fore-
saw an express claim for damages, as defined by PHICO's policy. That
claim, filed before ACIC's policy became effective, necessarily fell
within ACIC's exclusion. The trial court therefore erred in finding
that ACIC's policy provided coverage for the Watson claim.

PHICO contends that even if ACIC's policy did not provide cover-
age for the Watson suit, ACIC is not entitled to reimbursement from
PHICO because ACIC was acting as a "mere volunteer" when it
defended and settled the Watson matter. It is true that "[w]hen suing
as a subrogee, a mere volunteer may not recover defense costs and
settlement payments." *Nationwide Mut. Ins. Co. v. State Farm Mut.
Auto. Ins. Co.*, 122 N.C. App. 449, 454, 470 S.E.2d 556, 559 (1996).
However, one is not a volunteer if protecting a " 'real or supposed
right of interest.' " *Id.* (quoting *Insurance Co. v. Insurance Co.*, 277
N.C. 216, 221, 176 S.E.2d 751, 755 (1970) (hereinafter "Jamestown")).
As our Supreme Court has stated with regard to a similar situation:

Jamestown defended because Nationwide refused to do so.
Jamestown defended in good faith as Jamestown would have
been liable had it been adjudged that Nationwide's policy did not
provide coverage for [the insured]. Under these circumstances,
Jamestown was not such a pure volunteer as to be deprived of the
right of subrogation.

*Jamestown*, 277 N.C. at 222, 176 S.E.2d at 756. ACIC was not acting
as a mere volunteer; it had its own interests to protect. "[A]n insurer

may recover under subrogation theory if the insurer defends an insured with the good faith belief that he has an interest to protect although the insurer in fact has no duty to defend and no liability." *See Nationwide*, 122 N.C. App. at 453, 470 S.E.2d at 559. Accordingly, ACIC is entitled to reimbursement from PHICO.

This case is remanded to the superior court for entry of judgment that (1) PHICO's policy provided coverage for the Watson suit; (2) ACIC's policy did not provide coverage for the Watson suit; and (3) ACIC is entitled to recover from PHICO its costs for defending the claim, such amount being $54,863.48, plus interest at the legal rate from the date of entry of the judgment until paid by PHICO.

Affirmed in part, reversed in part, and remanded.

Judge WYNN concurs.

Judge HORTON dissents.

Judge HORTON dissenting.

The dispositive question before us is whether a "claim" was made against PHICO under its "claims-made" professional liability insurance policy. The PHICO policy defines "claim" in subsection (1) as an "express demand for damages." There is no contention that subsection applies here. Subsection (2) deals with a situation in which the insured hospital reasonably anticipates a claim for damages. I agree with the majority that the standard is subjective, and that we must examine the testimony of the hospital's risk manager, Ms. Chapman, to determine whether Ms. Chapman, on behalf of the insured, had a reasonable belief that a suit would be filed in the Watson case. I believe that Ms. Chapman did not have such a reasonable belief, and was merely filing a notice of claim with PHICO as a "precautionary" measure, as she described her action. The most telling statement by Ms. Chapman was contained in her letter of 13 October 1994 to PHICO, following the institution of an action by the Watsons against the hospital: "I had no idea that the enclosed case was being considered for litigation *at that time* [*i.e.*, when she sent the notice of claim to PHICO on 26 September 1994], simply that the records had been requested [by an attorney]." (Emphasis added.) The PHICO policy specifically provides that "[a]n event reported by the insured to PHICO as part of risk management or loss control services shall not be considered a report of claim." The weight of the evidence shows

that Ms. Chapman's "precautionary" report of claim was merely a "part of risk management," and was not based on a reasonable belief that a demand for damages against the insured would result from the attorney's request for records.

I respectfully dissent, therefore, from the majority opinion, and would reverse and remand the case for entry of judgment finding that the PHICO policy did not provide coverage of the claim in question, and that the ACIC policy did provide such coverage.