**GASTON MEMORIAL HOSPITAL, INC., Plaintiff,**

v.

**THE VIRGINIA INSURANCE RECIPROCAL, and The Reciprocal Group, Defendants.**

**No. 3:97CV467–H.**

United States District Court, W.D. North Carolina, Charlotte Division.

June 4, 1999.

Raboteau T. Wilder, Jr., David S. Dawson, Kilpatrick Stockton LLP, Charlotte, NC, for Gaston Memorial Hospital, Inc., plaintiffs.

Frederick K. Sharpless, Elrod, Lawing & Sharplesss, P.A., Greensboro, NC, for the Virginia Insurance Reciprocal, the Reciprocal Group, defendants.

## MEMORANDUM AND ORDER

HORN, Chief United States Magistrate Judge.

**THIS MATTER** is before the Court on Defendants' and Plaintiff's cross Motions for Summary Judgment (documents # 22 and # 25), filed April 19 and 20, 1999, respectively. The parties have filed the following memoranda and other pleadings regarding these motions:

1. Plaintiff's and Defendants' "Stipulations" filed April 20, 1999 (document # 24);

2. "Plaintiff's Brief in Support of its Motion for Summary Judgment" filed April 19, 1999 (document # 23);

3. "Defendants' Memorandum in Support of their Motion for Summary Judgment [Rule 56]" filed April 20, 1999 (document # 25);

4. "Defendants' Memorandum in Response to Plaintiff's Motion for Summary Judgment" filed May 10, 1999 (document # 26);

5. "Plaintiff's Response to Defendants' Motion for Summary Judgment" filed May 28, 1999 (document # 27).

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and therefore these motions are now ripe for the Court's review and disposition.

Having carefully reviewed the pleadings, record, arguments of counsel, and the applicable authority, the Court will *grant* "Defendants' Motion for Summary Judgment" (document # 25) and *deny* "Plaintiff's Motion for Summary Judgment"

(document # 22), for the reasons enumerated below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is a declaratory judgment action for medical malpractice insurance coverage brought pursuant to 28 U.S.C. § 1331 and § 2201. The parties have stipulated to or provided documents establishing the following facts:

On September 29, 1981, Theresa Moore–Garner–Walden gave birth to Melissa Marie Walden at Gaston Memorial Hospital ("the Hospital"). When the baby was delivered, the cord was wrapped around her neck and some meconium staining was present. The baby was transferred the following day to the neonatal intensive care unit at Charlotte Memorial Hospital (now known as Carolinas Medical Center).

By letter dated June 10, 1983, a Raleigh law firm notified the Hospital that it represented Melissa Marie Walden "in a claim for medical negligence benefits" and requested that the Hospital furnish it with her medical records. On November 16, 1983, the same law firm requested additional medical records.

At the time of receipt of these letters, and in fact from 1980 through 1988, the North Carolina Hospital Trust ("the Trust") provided the Hospital with professional liability insurance coverage. The Hospital did not at any time make a claim to the Trust for coverage related to the birth of Melissa Walden.

In 1988, the Hospital obtained a new professional liability coverage policy from Defendant The Virginia Insurance Reciprocal ("TVIR").[1] On January 23, 1989, Sheila R. Daniel of TVIR wrote to the Hospital's risk manager, Martha Rockett, confirming the coverage and welcoming the Hospital as an insured. In this letter, Daniel attempted to clarify any "confu-

---

1. Defendant The Reciprocal Group apparently serves as "attorney-in-fact" for TVIR, and Plaintiff has not asserted any independent claim of liability against it. Therefore, the Defendants will be referred to collectively by the singular denomination "TVIR."

sion... as to what cases are the responsibility of the Trust as opposed to TVIR and what cases will be adjusted by TVIR but not paid as to any settlement or judgment." In particular, Daniel wrote that "TVIR's policy covers a hospital not only for claims actually asserted by a patient or his legal representative, but also incidents that could lead to a claim that the hospital discovers and reports to us...." and that "The best approach for you to take is to report anything that looks like a claim or a potential claim to us by letter or phone, and we will help you investigate the coverage issues." Daniel's letter also identified the following as situations "to have... in mind when deciding what events to report to me as an incident likely to become a claim":

> 7. Infants born with unexpected perinatal asphyxia with APGARS less than 6 requiring transfer to a neonatal facility within 72 hours after birth.
>
> \*  \*  \*  \*  \*  \*
>
> 12. Inquiries by attorneys can be for any number of reasons but always suggest the possibility that a claim may be asserted against your hospital or a member of your medical staff. If your review of a patient's treatment does not clearly indicate the attorney's motives, report it to me and I will help you investigate further.

TVIR continued to insure the Hospital against professional liability for the next several years pursuant to a series of policy renewals, including policy HPL5U40891 effective October 1, 1991, through October 1, 1992, with a retroactive date to October 1, 1988 ("the 1991–92 Policy").

By letter dated November 21, 1991, attorney Theodore Enfield notified the Hospital that he represented Teresa Garner "in a claim for damages sustained in September, 1981" and requested that the Hospital furnish him with her medical records. By letter dated March 16, 1992, a Miami law firm notified the Hospital that it represented Theresa Garner and Melissa Walden, without specifying the matter or type of claim, and requested that the Hospital furnish it with the Waldens' medical records.

On June 19, 1992, the Hospital first wrote TVIR regarding Melissa Walden's birth and the Miami law firm's request for medical records. In that letter, Rockett stated as follows:

> In reviewing the records, it appears that the mother was admitted on September 29, 1981, after decelerations were noted in the physician's office. When the baby was delivered, the cord was wrapped around the neck and some meconium staining was present. The baby was transferred the following day to Charlotte Memorial Hospital's Intensive Care Nursery.
>
> No subsequent records have been located here and therefore I have no information on any subsequent medical problems which the baby may have developed. I would suspect that litigation would have been pursued years ago if there were significant problems with the infant. Apparently the mother now lives in Florida and perhaps she has found an attorney who thinks the case is worth pursuing.

On June 30, 1992, TVIR responded that there was no coverage for any liability claim against the Hospital associated with Melissa Walden's birth in 1981. Specifically, Debra L. Bittle informed the Hospital as follows:

> This is to follow up our previous conversation with regard to your reporting the above-noted claim. As we discussed, under your tail policy, H0040788R1, the effective dates are 10/1/88 through 10/1/93, with a retroactive date of 10/1/83 [sic].[2] As this matter occurred in 1981, it is prior to the retroactive date, and therefore we provide no coverage for same.

---

**2.** The retroactive date was, in fact, October 1, 1988, according to the policy declarations page.

The Hospital renewed its policy (designated as policy HPL5U40892) with TVIR effective October 1, 1992, through October 1, 1993, with a new retroactive date of October 1, 1975 ("the 1992–93 Policy" or "the renewal policy"). This renewal policy contained an exclusion listing a number of designated "medical incidents" that fell within the extended time period covered by this renewal policy but would nevertheless be excluded from coverage under it.[3] The September 1981 birth of Melissa Walden was not referenced in this list.

On July 14, 1993, Melissa Walden, by and through her mother and guardian *ad litem,* Theresa M. Garner, filed an action against the Hospital for medical malpractice arising from complications during her birth on September 29, 1981, entitled *"Melissa Marie Walden, et al. v. Donald D. Howe, MD., et al.,* Civil Action No. 3:93CV228–P" ("the Walden lawsuit"). By letter dated July 20, 1993, the Hospital wrote to TVIR regarding the Walden lawsuit and requested that TVIR provide coverage. The Hospital reasserted this coverage request by letter dated July 28, 1993, in which letter Rockett contended that her June 19, 1992 letter "was not notice of a claim but rather notification that a former patient's medical records had been requested by an attorney for an unknown reason."

On August 5, 1993, TVIR reiterated its denial of coverage. The Hospital retained its own counsel to defend the Walden lawsuit, and on May 31, 1995, settled it for one million dollars ($1,000,000.00).

The Hospital filed the instant declaratory judgment action on August 28, 1997, seeking reimbursement of the money paid to defend and to settle the Walden lawsuit. Following the completion of discovery, the parties filed the instant cross motions for summary judgment, which are now ripe for the Court's review and consideration.

## II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted only when the pleadings, responses to discovery, and the record reveal that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Federal Deposit Ins. Corp.,* 906 F.2d 972, 974 (4th Cir.1990); *Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979).

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. *Id.* at 249–50, 106 S.Ct. 2505.

When considering summary judgment motions, courts must view the undisputed facts and the inferences to be drawn therefrom in the light most favorable to the party opposing the motion. *Id.* at 255, 106 S.Ct. 2505. *Accord Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Miltier v. Beorn,* 896 F.2d 848 (4th Cir.1990); *and Cole v. Cole,* 633 F.2d 1083 (4th Cir.1980). In other words, summary judgment is appropriate only "when it is clear that there is no dispute concerning either the [material] facts of the controversy or the inferences to be drawn from those facts." *Wall v. AT & T Tech., Inc.,* 754 F.Supp. 1084, 1089 (M.D.N.C.1990), *quoting Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987).

In the instant matter, the parties agree that there are no genuine issues of material fact, and that the Court may decide as a matter of law whether TVIR is obligated

---

**3.** The excluded "medical incidents" occurred between May 1985 and September 20, 1988, and were presumably reported to, or covered by the Hospital's prior policy with, the Trust.

to reimburse the Hospital for the costs of defense and settlement of the Walden lawsuit.

In support of its claim for coverage, the Hospital contends that its June 1992 letter—informing TVIR of the most recent request for medical records which it had received from an attorney—was not a "claim" or "notice of a claim," and therefore the 1991–92 Policy was not the pertinent policy to provide coverage for Melissa Walden's claim. Rather, the Hospital contends that it did not give notice of a claim by the Walden family until after it received a summons and complaint in July 1993, and therefore the 1992–93 Policy—which included a retroactive date of October 1, 1975—was applicable and provided coverage. As a fallback position, the Hospital argues that the policy language defining what is a "claim" and setting forth the insured's obligation to give notice of a claim is ambiguous and must therefore be construed against TVIR. Finally, the Hospital contends that TVIR's failure to list the Walden birth among the "medical incidents" excluded from coverage under the 1992–93 Policy evidences TVIR's intent to provide coverage for any claim arising therefrom.

TVIR, on the other hand, contends that Martha Rockett's June 1992 letter constituted notice of a claim under the unambiguous terms of the 1991–92 policy; that there was no coverage for the Walden claim under that policy because the event giving rise to the claim occurred prior to the retroactive coverage date of October 1, 1988; that its denial of coverage on June 30, 1992 precluded the assertion of any subsequent claim under the 1992–93 Policy with the earlier retroactive date; and that it did not include the Walden claim on its list of excluded claims attached to the 1992–93 renewal policy because it had already denied coverage for that claim.

■ As with any contract dispute, the Court's review must begin with the relevant contract language. "In North Carolina, it is well settled that when construing an insurance policy a court must enforce the policy as written, without rewriting the contract or disregarding the express language used." *North Carolina Ins. Guaranty Assn. v. Century Indemnity Co.*, 115 N.C.App. 175, 179, 444 S.E.2d 464, 467 (internal quotations omitted) (1994). Where the contract language is clear and unambiguous, the court cannot look beyond the terms to determine the parties' intent. *Rosania v. Rosania*, 108 N.C.App. 58, 61, 422 S.E.2d 348, 350 (1992). The "[c]lear and express language of the contract controls its meaning, and neither party may contend for an interpretation at variance with the language on the ground that the writing did not fully express his intent." *Olive v. Williams*, 42 N.C.App. 380, 383, 257 S.E.2d 90, 93 (1979). If the pertinent policy language is ambiguous, however, the court must interpret such language against the insurance company and in favor of the insured. *North Carolina Ins. Guaranty Assn.*, 115 N.C.App. at 180, 444 S.E.2d at 467.

The parties do not appear to dispute that coverage for the Walden claim, if any, must be afforded by the second policy in question, the 1992–93 Policy, as the prior year's policy—in effect when the Hospital first informed TVIR of the medical records requests—clearly had a retroactive date which precluded coverage. Nevertheless, the terms of each policy—specifically as to what constitutes a "claim" or "notice of a claim"—are pertinent to this dispute. The policies in question are "claims-made" policies, each of which states that coverage is provided for damages "arising out of a Medical Incident, occurring subsequent to the Retroactive Date for which Claim is *first made against the Insured and reported to the Company during the Policy period*" (emphasis added). Thus, the Policy provides coverage for the Walden claim only if said claim was "first made" and "reported" to TVIR during the 1992–93 policy period.

Section V of each policy, boldly captioned "**WHEN CLAIM IS TO BE CON-**

**SIDERED AS FIRST MADE,**" provides as follows:

A Claim for injury shall be considered as being first made at the earlier of the following times:

**A.** when the Insured first gives written notice to the Company that a Claim has been made in accordance with Section VIII.A; or

**B.** when the Insured first gives written notice to the Company in accordance with Section VIII.A. of specific circumstances involving injury to a particular person which may subsequently result in a claim. Reports of incidents made by the Insured to the Company as part of engineering or loss control services, including quality care control reports, shall not be considered notice of Claim.

Section VII.A.1. of each policy describes the "**Insured's Duties in the Event of a Medical Incident or Claim**" as follows:

Upon obtaining knowledge of either a Claim made against the insured under this policy, or any specific circumstances involving injury to a particular person or Medical Incident which may subsequently result in a claim, the Insured shall give the Company or any of its authorized agents notice as soon as practicable.

Such notice shall be written and shall contain reasonably obtainable information with respect to the Medical Incident, including the nature and extent of professional health care services rendered or which should have been rendered, and the nature and extent of the type of Claim or Claim anticipated. The failure of an insured to meet such conditions shall be a breach under the terms of this policy and shall give the Company the right to cancel this policy.

Finally, the policy definitions of the terms "Claim" and "Medical Incident" are relevant to a determination of the parties' respective rights and obligations under the policy as well. "Claim" is defined as "a demand received by an Insured for money including the service of suit, demand for arbitration or the institution of any other similar legal proceeding to which this policy applies." A "Medical Incident" is defined in pertinent part as "any act or omission... in the furnishing of professional health care services."

■ Applying these terms to the operative facts in this case, it is clear that as of June 19, 1992, the Hospital had received no "demand... for money including the service of suit, demand for arbitration or the institution of any other similar legal proceeding." Rather, the Hospital had received a series of letters from attorneys requesting medical records related to Melissa Walden's birth. While an attorney's letter requesting a patient's medical records may, if unclear in its ultimate objective, suggest that the Hospital may at some future time be a target of a claim, the letter itself does not constitute a "Claim" under the policy definition.

TVIR concedes as much, but points to the policy language in Section VII.A.1 which also requires the Hospital to report "any specific circumstances involving injury to a particular person or Medical Incident which may subsequently result in a claim." The policy requires such notice to be in writing and to contain "reasonably obtainable information with respect to the Medical Incident, including the nature and extent of professional health care services rendered or which should have been rendered, and the nature and extent of the type of Claim or Claim anticipated." Since Rockett's June 19, 1992 letter provided the Hospital's medical records and a brief summary of the circumstances of Melissa Walden's birth, TVIR contends that this letter constituted notice to the insurer under Section VII.1.A. Thus, once the potential claim reported to TVIR ripened into an actual lawsuit, according to Section V.B. the claim is deemed to have been "first made" as of the earlier event—its initially being reported as "specific circumstances involving injury to a particular person which may subsequently result in a claim."

The undersigned finds that there is nothing inherently unreasonable or unclear about TVIR's interpretation of these policy provisions. The policy essentially requires an insured to give notice of any circumstances which might give rise to a claim; if a lawsuit or other money demand is ultimately filed, it will be the policy in effect at the time of that initial report to the insurer which is triggered, not the one in effect at the time of the service of the suit. While the Hospital did not know the nature or extent of Melissa Walden's claimed injuries as of June 1992, it was nonetheless sufficiently concerned by the most recent attorney request for medical records to report it to TVIR. There is no evidence before the Court that Rockett's letter was sent as a "[r]eport[ ] of incident[ ] made by the Insured to the Company as part of engineering or loss control services, including quality care control reports," and thus the only conclusion left is that the insured reported the receipt of this letter pursuant to its obligations under Section VII.A.1 of the policy, considering it to be "circumstances... which may result in a claim"; therefore, under the policy terms, the claim was "first made" to the insurance company at the time of the initial letter in June 1992.

Since the plain meaning of the contract supports the insurer's reading of the policy, the Hospital can only prevail if it demonstrates that the operative language is susceptible of a different reasonable reading, and is therefore ambiguous and must be construed in favor of coverage. The Hospital contends that Martha Rockett's June 19, 1992 letter informing TVIR of the medical records request was *not* notice of "any specific circumstances involving injury to a particular person or Medical Incident which may subsequently result in a claim" because it contained no information regarding any injury sustained by Melissa Walden or her mother.

The Hospital's interpretation of this provision to exclude Rockett's June 1992 letter from constituting notice is not reasonable, however; nothing in the policy language requires the insured to *verify* whether there has been *actual injury* or to determine the nature or extent thereof before reporting "specific circumstances involving injuries..." Nor does the request for "specific circumstances" require as much detail or conclusiveness as the Hospital suggests. Such a reading would require an insured to conduct a full investigation prior to reporting an incident of potential liability, and would leave the insured a great deal of discretion as to what types of injuries to report and when. The "specific circumstances" of the Walden birth—cord asphyxia and the presence of meconium in the amniotic fluid, followed by the infant's transfer to the Charlotte Memorial Hospital NICU—were well-documented in the medical records sent to TVIR along with Rockett's letter; combined with the receipt of a number of attorneys' requests for medical records, these circumstances would lead a reasonable person in Rockett's position to believe that litigation of some sort might ensue.[4]

The North Carolina Court of Appeals recently resolved a somewhat similar dispute involving a determination of when a claim was made and reported under a claims-made policy. In *American Continental Insurance Company v. PHICO Insurance Company*, 132 N.C.App. 430, 512 S.E.2d 490, 492–95 (1999), a child born at Caldwell Memorial Hospital in October 1991 experienced complications and was transported to a nearby children's hospital. Three years later, on August 19, 1994, prompted by the receipt of a letter from an attorney requesting the child's medical records, the hospital's risk manager sent a "Notice of Claim" form to its insurer, Defendant PHICO, which form was received

---

4. Indeed, Rockett's letter stated "...perhaps [the mother] has found an attorney who thinks the case is worth pursuing," although it made no reference as to what entities might be the target of any subsequent lawsuit. Furthermore, TVIR had previously informed Rockett that both problematic births followed by the infants transfer to a NICU and vague attorney requests for medical records were often likely indications of forthcoming claims.

two days before the hospital's insurance policy with PHICO was due to expire. PHICO immediately denied the claim, and suit was subsequently filed by the child's parents against the hospital on October 7, 1994, just days after the expiration of the policy. The hospital's subsequent insurer, American Continental Insurance Company (ACIC) defended the claim, settled the underlying lawsuit, and eventually sued PHICO for a determination of the insurers' respective coverage obligations. *Id.* at 492.

PHICO attempted to argue that under its policy language no "claim" had been reported to it prior to the expiration of the policy period because no express monetary demand had been received and no suit had been filed as of the time of reporting. The policy in question defined a "claim" as follows:

(1) an express demand for damages to which this insurance applies, arising from an injury allegedly caused by the insured; an express demand for damages shall be deemed to include a civil action in which damages to which this insurance applies are alleged and an arbitration proceeding to which the insured is required to submit by statute or court rule or to which the insured has submitted with PHICO's consent; or

(2) an act or omission which the insured reasonably believes will result in an express demand for damages to which this insurance applies.

*Id.* at 492. Under a section entitled "Reporting Requirements; Assistance and Cooperation of Insured," the policy also provided as follows:

(a) A claim shall be considered made when the insured has reported it to PHICO. A claim as defined in paragraph (1) of its definition shall be reported immediately to PHICO. The insured shall immediately forward to PHICO every demand, notice, summons or other process the insured or the insured's representative receives. A claim as defined in paragraph (2) of its

definition shall be reported as soon as practicable to PHICO....

An event reported by the insured to PHICO as part of risk management or loss control services shall not be considered a report of a claim.

*Id.* at 492–93.

The court determined that there had been no "claim" filed under subsection (1) of the policy definition, but determined that subsection (2) "sets up a subjective standard ... under which a claim is deemed filed if the insured reasonably believes that an express demand for damages will be forthcoming." The court examined the risk manager's testimony as to her intent in submitting the Notice of Claim form and to determine whether she at that time "had a reasonable belief that a suit would be filed." Regardless of the fact that the risk manager considered the form she sent to the insurance company to be "a precautionary notice" rather than an actual claim (as she defined the term), the communication to PHICO was found to be notice of a claim because the risk manager testified that "an attorney's request for records was a 'red flag' for her, indicating that 'the incident might turn into a claim.'" *Id.* at 493. The court therefore concluded that since the risk manager "reasonably anticipated an express demand for damages,... an effective notice of claim, as defined in the insurance policy, was therefore filed prior to 1 October 1994." *Id.* at 494.

In the instant case, the subject policy requires reporting of incidents likely to result in litigation, but does so in terms far less subjective than those of the policy at issue in *American Continental;* rather than making an insured's reporting obligation contingent on the insured's "reasonable belief" that litigation would follow, the instant policy requires reporting of "any specific circumstances involving injury to a particular person or Medical Incident *which may* subsequently result in a claim" (emphasis added). This definition is, in fact, objective, meaning that a claim will be

considered to have been reported for the purposes of coverage anytime the insurer is notified of a medical incident which might result in a claim, regardless of the insured's subjective intent in reporting it (unless it is reported as "part of engineering or loss control services, including quality care control reports"). Since there is no evidence that the June 19, 1992 letter was part of a "quality control care report," the Court again must conclude that the communication served as notice of "specific circumstances... which may subsequently result in a claim." *Cf. id.* at 494 (determining that risk manager's notice of claim was not part of a more generalized "risk management/loss control report").

Accordingly, since the policy clearly provides that a claim is "first made" when the insurer has been given notice of "any specific circumstances involving injury to a particular person or Medical Incident which may subsequently result in a claim," and is subject to no other reasonable interpretation, the Court must find that the Hospital "first made" a claim regarding the Walden birth as of June 19, 1992. Therefore the 1991–92 policy was triggered, but provided no coverage since the incident in question occurred prior to the retroactive date of October 1, 1988. Since the claim was not "first made against the Insured and reported" during the 1992–93 policy period, neither does that policy provide coverage for the Walden lawsuit.[5]

### III. *ORDER*

NOW THEREFORE, IT IS ORDERED:

1. "Defendants' Motion For Summary Judgment" (document # 25) is **GRANTED**, "Plaintiff's Motion For Summary Judgment" (document # 22) is **DENIED**,

and this action is **DISMISSED WITH PREJUDICE**. Each party shall bear its own costs.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

---

5. The Court is not persuaded by the Hospital's argument regarding TVIR's failure to list the Walden incident as one of several expressly excluded under the 1992–93 renewal of the policy and extension of the retroactive date. The omission of this claim is altogether unsurprising, given that TVIR had previously denied the claim in June 1992 prior to this policy renewal. Indeed, given TVIR's prior express written denial of coverage for any

claim arising out of Melissa Walden's birth, the Hospital cannot credibly assert that TVIR intended to cover the Walden claim by omitting it from the list of excluded medical incidents. The Hospital has not argued that TVIR was somehow estopped from denying coverage by its failure to exclude the Walden medical incident on this list, and in any event any such argument would be untenable on the factual record.