**IN RE FORECLOSURE OF C AND M INVESTMENTS**

[346 N.C. 127 (1997)]

IN THE MATTER OF: THE FORECLOSURE OF A DEED OF TRUST EXECUTED BY C AND M INVESTMENTS OF HIGH POINT, INC. TO RAYMOND D. THOMAS, TRUSTEE RECORDED IN BOOK 3846 AT PAGE 1446 GUILFORD COUNTY REGISTRY

No. 366PA96

(Filed 9 May 1997)

**1. Mortgages and Deeds of Trust § 51 (NCI4th)— purchase money deed of trust—credit for unreleased property—not payment on note—default**

A purchaser defaulted on a promissory note secured by a purchase money deed of trust when it failed to make a semiannual payment of principal and interest due on 1 November 1993, although the purchaser had a property release credit in excess of the principal payment then due, where the semiannual payments were due on 1 May and 1 November, and the purchaser had not made release payments in an amount sufficient to cover both the 1 May and 1 November 1993 payments due under the note. The release agreement did not allow the purchaser to make a semiannual payment in May, fail to obtain a release of a corresponding amount of property, and then submit the unreleased property in lieu of making the November semiannual payment.

**Am Jur 2d, Mortgages §§ 412 et seq.**

**2. Mortgages and Deeds of Trust § 46 (NCI4th)— purchase money deed of trust—release of property—condition precedent—default**

A purchaser was not entitled to release of a 28.68-acre tract of property from a purchase money deed of trust in October 1993 because it had not complied with an express condition precedent that parts of the property sought to be released must be set forth on a duly recorded plat prior to release of the property. Nor was the purchaser entitled to a release of the 28.68-acre tract in April 1994, even though it had then recorded a plat of the tract, because the purchaser was in default on the note after it failed to make the 1 November 1993 semiannual payment due on the note, and a condition in the deed of trust prohibited release in the event of default. Allowing the vendor to foreclose on the property, including the 28.68-acre tract the purchaser sought to have released, will not amount to a windfall or double recovery to the vendor because the purchaser is entitled to any surplus proceeds

**IN RE FORECLOSURE OF C AND M INVESTMENTS**

[346 N.C. 127 (1997)]

from the foreclosure sale after payment of the vendor as the note holder. N.C.G.S. § 45-21.31.

**Am Jur 2d, Mortgages §§ 1195 et seq.**

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 123 N.C. App. 52, 472 S.E.2d 341 (1996), modifying and affirming the order and judgment entered by Albright, J., on 3 May 1996 in the Superior Court, Guilford County. Heard in the Supreme Court 19 March 1997.

*Adams Kleemeier Hagan Hannah & Fouts, P.L.L.C., by M. Jay DeVaney and David S. Pokela, for petitioner-appellant Walker Heirs, Inc.*

*Elrod Lawing & Sharpless, P.A., by Frederick K. Sharpless, for respondent-appellee Browns Summit Development Company.*

FRYE, Justice.

This appeal involves a foreclosure petition filed by Walker Heirs, Inc. regarding property in Guilford County.

The relevant facts and circumstances are as follows: On 13 November 1990, C & M Investments of High Point, Inc. (C & M), purchased 280 acres of land in Guilford County from Walker Heirs, Inc. (Walker). A purchase price of $1,258,740 was paid, $338,685 in cash and the balance financed by Walker through a promissory note in the amount of $920,055. The note provides for semiannual payments due the first day of May and November. The promissory note is secured by a purchase money deed of trust. In January 1991, respondent C & M transferred its interest in the property to respondent Browns Summit Development Corporation (BSDC).

A release agreement was executed by the parties and was incorporated by reference into the deed of trust. The agreement allowed BSDC to seek a release of property from the deed of trust upon BSDC's compliance with conditions set forth in the note and the release agreement. The release agreement permitted BSDC to seek a release of property when payment was made in the amount of $4,500 per acre, contingent upon compliance with the conditions in the release agreement.

In consideration of the down payment of $338,685, C & M was entitled to a release of certain lots totaling 61.7 acres, contingent

## IN RE FORECLOSURE OF C AND M INVESTMENTS

[346 N.C. 127 (1997)]

upon compliance with the conditions in the release agreement. The initial release did not occur until 4 November 1991, when 52.267 acres were released. This left 9.433 acres which were paid for and not released. The parties agreed by letter dated 4 August 1993 that BSDC was entitled to a release of 9.433 acres on any lot in Phase II after Phase II had been platted and as long as the conditions precedent to release set forth in the original release agreement were met.

On 28 October 1993, BSDC requested release of 28.68 acres based on the existing 9.433-acre credit, the May 1993 semiannual installment payment made in the amount of $76,761.26, and a cashier's check in the amount of $10,750.50 for the balance. As of 28 October 1993, a plat of the 28.68 acres had not been recorded. Walker denied BSDC's request for release of the property because BSDC had not complied with the condition precedent in the release agreement that required a plat to be recorded prior to release.

On 1 November 1993, a semiannual payment of principal and interest was due, and BSDC failed to make the payment. On 15 November 1993, Raymond D. Thomas, as trustee, notified BSDC of the default under the note.

On 22 April 1994, BSDC recorded a plat of the 28.68-acre tract and requested a release of the property on 28 April 1994. Walker denied the request for release on the basis that BSDC was in default.

On 20 May 1994, Walker initiated foreclosure proceedings. Sharon R. Williams, Assistant Clerk of Superior Court, Guilford County, entered an order on 21 September 1994, authorizing the trustee to conduct a foreclosure sale. BSDC gave notice of appeal to the Superior Court, Guilford County. Walker subsequently filed a motion for summary judgment. The case was heard before Judge W. Douglas Albright on 10 April 1995. Judge Albright entered an order and judgment on 3 May 1995 reversing the decision of the clerk, denying the petition for foreclosure and Walker's motion for summary judgment, and making the following pertinent conclusions of law:

4. Because [BSDC] had paid $119,209.76 for releases of property in excess of the property that had been released, [BSDC's] failure to make the November 1, 1993 payment on the note did not constitute a default.

5. [Walker's] failure to release property in response to the demand of April 28, 1994, was wrongful and a breach of the release agreement.

IN RE FORECLOSURE OF C AND M INVESTMENTS

[346 N.C. 127 (1997)]

6. [BSDC's] failure to make the payment of May 1, 1994, on or before May 10, 1994, constituted a default under the promissory note.

7. [BSDC] has a legal defense to foreclosure upon the 28.68 acres of property for which it has demanded release, to wit, that [Walker] breached the agreement by failing to release the property when a release was properly demanded.

8. While [Walker] may have a right to foreclose upon some portion of the property that is the subject of the petition, [Walker] does not have a right to foreclose upon the entire parcel that is the subject of the petition.

From the trial court's order, Walker appealed to the Court of Appeals. In a unanimous opinion, the Court of Appeals affirmed the trial court's conclusion that BSDC was entitled to a release of the 28.68-acre tract and modified the trial court's conclusion as to when default under the note occurred. The Court of Appeals held that default occurred in November 1993, not May 1994, because BSDC was not entitled to apply release credits to the November principal payment, and thus, failure to make the November 1993 payment constituted default under the note. On 10 October 1996, this Court allowed Walker's petition for discretionary review.

[1] The first issue on this appeal is whether BSDC defaulted under the promissory note in November 1993.

Walker contends that BSDC did not make the semiannual payment due under the note in November 1993, and therefore, BSDC was in default in November 1993. We agree.

A semiannual payment of principal of $76,761.26 plus interest was due under the note on 1 November 1993. The parties stipulated and the trial court found as fact that BSDC "made no payments, in cash or in kind, to [Walker] since September, 1993." It is uncontested that the payment made in September 1993 was for the semiannual installment due on 1 May 1993. Thus, the 1 November 1993 payment was not made. Nonetheless, BSDC contends and the trial court held that there was not a default in November 1993 because the existing "release credit" was sufficient to cover the payment of principal. The Court of Appeals held to the contrary. We agree with this holding of the Court of Appeals.

The promissory note states that principal and interest are payable as follows:

**IN RE FORECLOSURE OF C AND M INVESTMENTS**

[346 N.C. 127 (1997)]

Principal due in Eleven (11) semi-annual installments of Seventy Six Thousand Six Hundred Seventy One [sic] and 26/100 Dollars ($76,761.26) each plus accrued interest commencing on May 1, 1991 and continuing on the first day of November, 1991 and continuing on the first day of each May and November thereafter until November 1, 1996 when the balance of principal and accrued interest shall be due and payable in full.

The release agreement executed on the same date provides that "subject to the conditions herein set forth, a release payment of $4,500.00 per acre shall be paid." Paragraph five of the release agreement provides as follows:

All payments herein made for releases shall be applied toward the next payment of principal and interest due on the NOTE, and if the amount of the same shall be equal to or greater than the next semi-annual payment called for in the NOTE when added to any prior release payment being applied to the same semi-annual payment, then said semi-annual payment will have been considered paid. Any excess shall be applied to next semi-annual payment.

BSDC contends that the foregoing provisions of the note and the release agreement allow it to apply credit for unreleased property to the semiannual payments due under the note. We disagree.

BSDC had a contractual obligation to make semiannual payments under the promissory note. Whether BSDC sought to have corresponding property released, or did not seek to do so successfully, does not relieve BSDC of the contractual obligation to make semiannual payments under the note. Paragraph five of the release agreement outlines how payments for releases were to be applied to the semiannual payments due under the note. Under the language of the release agreement, a semiannual payment is considered paid when the release payments "applied to the same semi-annual payment" are "equal to or greater than" the next payment due under the note. This language does not allow BSDC to make a semiannual payment in May, fail to obtain a release of a corresponding amount of property, and then submit the unreleased property in lieu of making the November semiannual payment. Regardless of whether property is released under the release agreement, semiannual payments become due under the note in May and November. Since BSDC did not make release payments in an amount sufficient to cover both the 1 May and 1 November 1993 payments due under the note, a default occurred in

November 1993. Accordingly, we affirm the holding of the Court of Appeals as to this issue.

[2] The next issue on this appeal is whether BSDC was entitled to a release of the 28.68-acre tract of property in October 1993. We hold that BSDC was not entitled to a release of the property in October 1993 because it had not complied with a condition precedent to release.

The release agreement entered into by the parties on 13 November 1990 set forth the following "CONDITION PRECEDENT TO RELEASE":

> It is understood and agreed that the DEBTOR shall not be entitled to any release of any of the REAL ESTATE until that part which is sought to be released is set forth on a duly recorded plat as a designated lot thereon, and said plat is in conformity with the ORDINANCE and approved by the appropriate agency in Guilford County which shall administer the ORDINANCE. It is further agreed that no release of the REAL ESTATE will be made until any streets or roads on any recorded plat shall have been built or bonded to be built in accordance with the ORDINANCE and the rules and regulations of the Department of Transportation of North Carolina, if the latter approval be required. No partial platted lot shall be released, but only a total platted lot. In addition, any remaining portion of the REAL ESTATE not released shall have access to public roads or streets.

"A condition precedent is an event which must occur before a contractual right arises, such as the right to immediate performance." *In re Foreclosure of Goforth Properties, Inc.*, 334 N.C. 369, 375, 432 S.E.2d 855, 859 (1993). " 'Breach or non-occurrence of a condition prevents the promisee from acquiring a right, or deprives him of one, but subjects him to no liability.' " *Harris & Harris Constr. Co. v. Crain & Denbo, Inc.*, 256 N.C. 110, 117, 123 S.E.2d 590, 595 (1962) (quoting 3 Samuel Williston, *A Treatise on the Law of Contracts* § 665 (rev. ed. 1936)).

It is clear from the language of the release agreement that the parties agreed that there were conditions precedent to the release of any property, including that parts of the property would be duly recorded before they would be released. It is uncontested that BSDC did not record a plat of the 28.68-acre tract until 22 April 1994. Thus, in October 1993, BSDC was not in compliance with the express con-

dition precedent requiring "that part which is sought to be released [to be] set forth on a duly recorded plat" prior to a release of the property.

Walker contends that BSDC was not entitled to a release in April 1994 because the roads were not properly bonded in accordance with the condition precedent to release and because BSDC was in default on the note. We conclude that BSDC was not entitled to a release of the property in April 1994 because BSDC was in default on the note, having failed to make the 1 November 1993 payment. Therefore, it is unnecessary to reach the roads issue.

Paragraph four of the deed of trust provides in pertinent part: "Grantor shall not be entitled to any release of property unless Grantor is not in default and is in full compliance with all of the terms and provisions of the Note, this Deed of Trust, and any other instrument that may be securing said Note." Thus, BSDC was not entitled to a release since it was in default under the note because the 1 November 1993 payment had not been made. Therefore, despite the fact that on 22 April 1994 BSDC recorded the plat in compliance with the condition precedent outlined in the release agreement, BSDC was not entitled to a release of the tract at that time because BSDC was not in compliance with the condition in the deed of trust that prohibited releases in the event of default.

The Court of Appeals relied on this Court's decision in *In re Foreclosure of Michael Weinman Assocs.*, 333 N.C. 221, 424 S.E.2d 385 (1993), for its conclusion that "BSDC is entitled to have such property released from the deed of trust as was paid for prior to their default 1 November 1993." *In re Foreclosure of C & M Investments*, 123 N.C. App. 52, 60, 472 S.E.2d 341, 345 (1996). We disagree with this conclusion of the Court of Appeals.

In *Weinman*, the parties contracted for the purchase of property with a down payment of twenty-five percent of the purchase price, a release of one-fourth of the acreage, and three successive payments of twenty-five percent plus interest with corresponding releases of property. *Weinman*, 333 N.C. at 224, 424 S.E.2d at 386. Since the description and measurement of the remaining three-fourths acreage was approximate, a survey was necessary to obtain an exact legal description for the documents releasing the remaining acreage. *Id.* at 225, 424 S.E.2d at 387. At the time the buyer made the second full payment, the requisite survey work to obtain a legal description had not been completed. *Id.* The seller acknowledged receipt of the payment

by letter and stated that "[w]e agree to execute a Release containing such a proper legal description promptly upon presentation to us." *Id.* at 229, 424 S.E.2d at 389. The buyer failed to make the third payment when due, and the seller instituted foreclosure proceedings. *Id.* at 225, 424 S.E.2d at 387. Prior to the foreclosure hearing, the buyer presented a release containing a proper legal description for the second tract, but the seller refused to execute the release. *Id.* at 225-26, 424 S.E.2d at 387.

On appeal, this Court held that a default on the third and fourth tracts of property did not authorize the seller to refuse to release the second tract and include it in the foreclosure. *Id.* at 229, 424 S.E.2d at 389. The instant case, however, is distinguishable from *Weinman.* In *Weinman,* the buyer had made full payment for the second tract and, as acknowledged by the seller, was entitled to a release of the property upon presenting a release containing a proper legal description. Because the buyer provided a document for the release of the second tract, including the proper legal description, to the seller prior to the foreclosure hearing, the seller was not entitled to refuse the release and foreclose on the second tract of property. *See id.*

In contrast, the parties in the instant case agreed to an express condition precedent that the parts of the property sought to be released must be set forth on a duly recorded plat prior to release of the property. This express condition precedent is materially different from the ancillary requirement of completing the survey in order to provide a legal description in *Weinman.* We further note that Walker contends that it bargained for this substantive condition in the instant case in order to protect it from a release of property that could violate subdivision laws.

In October 1993, the 28.68-acre tract for which BSDC sought a release was not shown on a duly recorded plat. Therefore, since an express condition precedent to release was not satisfied, BSDC was not entitled to a release of the 28.68-acre tract in October 1993. In addition, as noted above, BSDC was in default under the note when it sought a release in April 1994, and therefore, a release of the property at that time was prohibited by the deed of trust.

The Court of Appeals held that

to allow [Walker] to retain the principal payments paid by BSDC as per the requirements of the note, and to allow [Walker] to foreclose on the property that BSDC has paid to have released would

amount to a windfall. While BSDC did not strictly comply with the conditions precedent in the release agreement, public policy dictates that [Walker] should not be allowed to receive a double recovery.

*In re Foreclosure of C & M Investments*, 123 N.C. App. at 59, 472 S.E.2d at 345. We disagree. To allow Walker to foreclose on the property including the 28.68-acre tract that BSDC sought to have released will not amount to a windfall or double recovery to Walker because, under the foreclosure statutes, BSDC is entitled to any surplus proceeds from the foreclosure sale after payment to Walker as the note holder. *See* N.C.G.S. § 45-21.31 (1996). Accordingly, we reverse the Court of Appeals on this issue.

In conclusion, we affirm the Court of Appeals' holding that BSDC was in default under the note in November 1993. However, we hold that BSDC was not entitled to a release of the property in October 1993 or April 1994. Accordingly, we reverse the Court of Appeals on this issue and remand the case for further remand to the Superior Court, Guilford County, for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.