RAMON L. EVERTS AND WIFE, REGINE M. EVERTS, PLAINTIFFS V. JOHN PARKINSON AND WIFE, VICKI T. PARKINSON; A.T. DOMBROSKI, JR., INDIVIDUALLY; A.T.D. CONSTRUCTION COMPANY, INC.; RICKS CONSTRUCTION, INC.; AND PRIME SOUTH CONSTRUCTION, INC., DEFENDANTS

No. COA00-1148

(Filed 4 December 2001)

1. **Statutes of Limitations and Repose— synthetic stucco claims—time when damage might have been discovered—summary judgment**

    Summary judgment should not have been granted for plaintiff in a synthetic stucco action on the issue of whether plaintiffs' claims against the original owners of the house were barred by the statute of limitations where the evidence produced during discovery indicated at least three times at which the defects or damage might have reasonably become apparent to plaintiffs, the last of which occurred within three years prior to the filing of the complaint. N.C.G.S. §§ 1-50(a)(5)(f), 1-52.

2. **Fraud— synthetic stucco—action against original owner—failure to disclose material fact—reasonable reliance**

    The trial court erred in a synthetic stucco action by granting summary judgment for defendant Mr. Parkinson on a fraud claim, but correctly granted summary judgment for defendant Mrs. Parkinson, where a jury could infer from the evidence that the alleged material defects were known to Mr. Parkinson; Mr. Parkinson knew that the defects were not discoverable in the exercise of plaintiffs' diligent attention or observation; Mr. Parkinson therefore had a duty to disclose the existence of the defects to plaintiffs, which he failed to do; Mr. Parkinson's breach of the duty to disclose was reasonably calculated to deceive and undertaken with the intent to deceive; plaintiffs were in fact deceived; and this deception resulted in damage to plaintiffs. Reasonable reliance is a redundant and unnecessary element in the context of a claim of fraud based on a failure to disclose a material fact.

3. **Fraud— negligent misrepresentation—synthetic stucco—statements in contract to sell—condition precedent—no liability**

    Summary judgment for defendants was affirmed as to a negligent misrepresentation claim in a synthetic stucco action

EVERTS v. PARKINSON

[147 N.C. App. 315 (2001)]

against the original owners of the house where the statements relied upon by plaintiffs (who purchased the house from defendants were in the contract to sell and were within the context of a condition precedent. As such, they may not be the basis for liability.

**4. Contracts— sale of synthetic stucco house—condition of purchase—condition precedent—no liability**

The trial court in a synthetic stucco action correctly granted summary judgment for defendants Parkinson (the original purchasers who in turn sold to plaintiffs) as to a breach of contract claim where the language relied upon by plaintiffs was in an addendum to the contract and was a condition of purchase. The failure of a plaintiff to comply with conditions precedent in a contract may allow the buyer to terminate the contract prior to closing, but may not subject the seller to liability.

**5. Warranties— sale of synthetic stucco house—express warranty claim**

The trial court in a synthetic stucco action did not err by granting summary judgment for defendants Parkinson on a breach of express warranty claim. There is no authority indicating that a breach of express warranty claim may be brought upon alleged warranties in a contract for the sale of a dwelling or real property as opposed to goods. The proper cause of action would be a claim for breach of contract.

**6. Warranties— implied warranty of habitability—action by subsequent purchaser against original owner**

Summary judgment was properly granted for defendants Parkinson in a synthetic stucco action on a claim for breach of an implied warranty of habitability where the Parkinsons were the original purchasers of the house who then sold to defendants. This cause of action may only be maintained against a defendant who is both the builder and the vendor of a building, consistent with the rationale that builder-vendors have superior knowledge of the construction process and materials, the ability to avoid defects, and the ability to bear risk.

**7. Negligence— synthetic stucco—inspection by builder three years after first sale—liability to subsequent purchaser**

Summary judgment was properly granted for the builder of a house in a synthetic stucco action by a subsequent purchaser

EVERTS v. PARKINSON

[147 N.C. App. 315 (2001)]

where plaintiffs contended that ATD was negligent in its inspection of a window for the original purchaser. The Court of Appeals declined to hold that the builder of a house owes a duty to a subsequent owner where the builder was called upon by the original owner to inspect the house for damage more than three years after the house was completed and performed no repair work at that time.

8. **Negligence— synthetic stucco—liability of contractor doing repairs to subsequent purchaser**

The trial court did not err in a synthetic stucco action by granting summary judgment for a company which performed improvement work on the house for the original owners. There is no authority holding that a party which undertakes to repair a house under contract with the original owner owes a duty of care to a subsequent purchaser of the house. Moreover, even if there was a duty of care, there was no forecast of evidence of negligence.

Appeal by plaintiffs from orders entered 18 May 2000 by Judge Herbert O. Phillips, III in New Hanover County Superior Court. Heard in the Court of Appeals 22 August 2001.

*Lewis & Roberts, P.L.L.C., by Daniel K. Bryson and F. Murphy Averitt, III, for plaintiff-appellants.*

*Marshall, Williams & Gorham, L.L.P., by John L. Coble, for defendant-appellees John Parkinson and Vicki T. Parkinson.*

*Dean & Gibson, L.L.P., by Christopher J. Culp; Frost Brown Todd, LLC, by Kathy Kendrick and Carl E. Grayson, for defendant-appellees A.T. Dombroski, Jr. and A.T.D. Construction Company, Inc.*

*Bennett & Guthrie, P.L.L.C., by Rodney A. Guthrie, for defendant-appellee Prime South Construction, Inc.*

HUNTER, Judge.

Ramon L. Everts and Regine M. Everts ("plaintiffs") appeal from three orders entered 18 May 2000 granting summary judgment in favor of five defendants. We affirm in part, and reverse in part and remand for further proceedings.

This case involves a house clad with Exterior Insulation and Finish System ("EIFS"), also known as synthetic stucco. By contract dated 26 June 1993, plaintiffs purchased the house, located in Wilmington, North Carolina, from defendants John Parkinson and Vicki T. Parkinson ("the Parkinsons"), the original owners. On 9 June 1997, plaintiffs filed this action against the Parkinsons, as well as the builders of the house, A.T.D. Construction Company and its president A.T. Dombroski, Jr. (together "ATD"), and a company that performed improvement work on the house, Prime South Construction, Inc. ("PSC"). The complaint alleges that plaintiffs have had to undertake extensive and costly repairs to the house as a result of water intrusion and wood rot problems. The complaint sets forth the following causes of action: (1) as to the Parkinsons, fraud, negligent misrepresentation, breach of contract, breach of express warranty, and breach of implied warranty; (2) as to ATD, willful and wanton negligence; and (3) as to PSC, negligence. The complaint also sets forth a claim against an additional defendant (Ricks Construction, Inc.) which is not at issue in this appeal. The trial court granted summary judgment in favor of the Parkinsons, ATD, and PSC on all claims against them. Plaintiffs appeal.

Rule 56 of the North Carolina Rules of Civil Procedure provides that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). A defendant may show that it is entitled to summary judgment by:

> (1) proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party (2) cannot produce evidence to support an essential element of his or her claim, or (3) cannot surmount an affirmative defense which would bar the claim.

*Bernick v. Jurden*, 306 N.C. 435, 440-41, 293 S.E.2d 405, 409 (1982) (citation omitted). Furthermore, "[t]he record is to be viewed in the light most favorable to the non-movant, giving it the benefit of all inferences reasonably arising therefrom." *Ausley v. Bishop*, 133 N.C. App. 210, 214, 515 S.E.2d 72, 75 (1999). Having carefully reviewed the record, we reverse in part the trial court's order granting summary judgment in favor of the Parkinsons and we remand for further proceedings on plaintiffs' claim of fraud as against Mr. Parkinson only. As

to the claim of fraud against Mrs. Parkinson and all remaining claims against the Parkinsons, and as to the claims against ATD and PSC, we affirm the trial court's grant of summary judgment.

## I. The Parkinsons

[1] We first address plaintiffs' five claims against the Parkinsons: fraud, negligent misrepresentation, breach of contract, breach of express warranty, and breach of implied warranty.

### A. Statute of Limitations

The Parkinsons contend, at the outset, that they are entitled to summary judgment on all five claims because each is barred by the three-year statute of limitations set forth in N.C. Gen. Stat. § 1-52 (1999). We disagree. It is well-established that:

> Ordinarily, the question of whether a cause of action is barred by the statute of limitations is a mixed question of law and fact. However, when the bar is properly pleaded and the facts are admitted or are not in conflict, the question of whether the action is barred becomes one of law, and summary judgment is appropriate.

*Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985) (citations omitted). When the evidence is sufficient to support an inference that the limitations period has not expired, the issue should be submitted to the jury. *Little v. Rose*, 285 N.C. 724, 727, 208 S.E.2d 666, 668 (1974).

We believe that the Parkinsons were not entitled to summary judgment on the basis of the statute of limitations because the facts here are in conflict as to when the statute of limitations period started to run. The parties do not dispute that all of plaintiffs' claims against the Parkinsons are subject to the three-year statute of limitations set forth in N.C. Gen. Stat. § 1-52. There is also no dispute that plaintiffs' causes of action did not accrue until the defect or damage to plaintiffs' property became apparent or ought reasonably to have become apparent to them. *See* N.C. Gen. Stat. § 1-50(a)(5)(f) (1999) ("[f]or purposes of the three-year limitation prescribed by G.S. 1-52, a cause of action based upon or arising out of the defective or unsafe condition of an improvement to real property shall not accrue until the injury, loss, defect or damage becomes apparent or ought reasonably to have become apparent to the claimant"); *Forsyth Memorial Hospital v. Armstrong World Industries*, 336 N.C. 438, 444 S.E.2d 423

(1994) (holding that N.C. Gen. Stat. § 1-50 applies to any claim arising out of an improvement to real property). Thus, whether these claims are barred by the statute of limitations requires a determination of when the alleged defect or damage became apparent, or ought reasonably to have become apparent to plaintiffs.

The evidence produced during discovery indicates at least three possible points in time at which it might be determined that the alleged damage or defects became apparent or reasonably should have become apparent to plaintiffs. First, Mrs. Everts testified during her deposition that she discovered water intrusion in the garage and living room within three months after the purchase of the house from the Parkinsons in August of 1993. Second, Mrs. Everts testified that in approximately March of 1994, plaintiffs hired a painter who inspected the house and notified Mrs. Everts that he had worked on the exterior of the house about two years before when the Parkinsons were the owners, at which time he had painted the exterior of the house, cleaned the roof, and sealed the roof with a "special sealer." He told Mrs. Everts that he had found rot on certain windows and that he had pointed this out to Mr. Parkinson at that time. He also told her that he had noticed Mr. Parkinson doing "repair work on the windows quite often," and that, as a result, "he was under the impression that quite a number of windows had water problems." The Parkinsons point to these two points in time and contend that by at least March of 1994 the alleged damage was apparent or reasonably should have been apparent to plaintiffs, and that their claim filed on 9 June 1997 is therefore barred by the three-year statute of limitations.

Plaintiffs, on the other hand, point to a third point in time, February of 1996, and contend that they did not discover that their home suffered significant water intrusion damage and construction defects until this time. Mr. Everts testified that he attended a meeting about synthetic stucco in late 1995 or early 1996, after which he followed the suggestion of the New Hanover County Building Commission and hired an engineer who conducted a moisture test on the home and provided a detailed report as to its condition. Thus, plaintiffs contend, they did not realize the nature of the defects and the extent of the damage until February of 1996, and, therefore, their complaint filed on 9 June 1997 is not barred.

We believe that the evidence produced during discovery allows at least an inference that the alleged damage was not apparent, and should not reasonably have been apparent, to plaintiffs prior to June

of 1994. Thus, the issue of whether plaintiffs' claims against the Parkinsons are barred by the statute of limitations is an issue for the jury, and the Parkinsons are not entitled to summary judgment on this basis.

### B. Causes of Action Against the Parkinsons

The Parkinsons further argue that there are no genuine issues as to any material facts and that they are entitled to summary judgment as a matter of law on all five causes of action. *See* N.C.R. Civ. P. 56(c). We review each cause of action in turn.

### 1. Fraud

**[2]** The essential elements of fraud are: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). This State has long recognized that "[w]here a material defect is known to the seller, and he knows that the buyer is unaware of the defect and that it is not discoverable in the exercise of the buyer's diligent attention or observation, the seller has a duty to disclose the existence of the defect to the buyer." *Carver v. Roberts*, 78 N.C. App. 511, 512-13, 337 S.E.2d 126, 128 (1985) (citing *Brooks v. Construction Co.*, 253 N.C. 214, 217, 116 S.E.2d 454, 457 (1960)). In such cases, *suppressio veri* (a failure to disclose the truth) is as much fraud as *suggestio falsi* (an affirmative false representation). *Id.* at 512, 337 S.E.2d at 128. Thus, as the sellers of the house, the Parkinsons were under an affirmative duty to disclose to plaintiffs, as the buyers of the house, the existence of any known material defects in the home which were not known to plaintiffs and which were not discoverable by them in the exercise of their diligent attention or observation.

### a. Intent to Deceive

The Parkinsons argue, first, that plaintiffs have failed to show any genuine issue of material fact as to whether the Parkinsons concealed any material fact with the intent to deceive. As to Mr. Parkinson, we disagree. After the Parkinsons moved into the house in November of 1988, they experienced numerous problems with the house. The first problem involved "Becker window lights." Within the first year, Mr. Parkinson discovered that the seal in fifteen to twenty window lights did not function properly and allowed moisture to enter the space between the two panes of glass, which caused fogging in the win-

dows. Mr. Parkinson "viewed it as a problem" and wrote a letter to the Becker company, complaining that "the seal failure problem in the Colonial Seal Windows is much worse than originally believed," and stating that repairing these windows would be a "major undertaking." In response, a representative from Becker came to the house and fixed the windows by replacing the glass. Thereafter, in December of 1990 and at other times between 1988 and 1992, additional window lights became fogged, but Mr. Parkinson did not hire a professional to replace them, and instead decided to replace them himself. In performing this work, Mr. Parkinson did not use butyl bedding compound, as recommended by Becker in the company's literature; instead, he used a latex acrylic caulking compound. Mr. Parkinson conceded that he did not know whether the latex acrylic caulking would work.

The second problem involved rotting brick mold. After approximately two years, Mr. Parkinson began to discover rotting pieces of brick mold around at least seven windows or doors. At the time, Mr. Parkinson believed that the brick mold was rotting because the house was built such that the brick mold extended beyond the stucco and, as a result, was exposed to rain and the elements. Mr. Parkinson did not hire a professional to replace these pieces of rotting brick mold; instead he repaired the brick mold himself because "it seemed to be a relatively simple type of maintenance problem." However, Mr. Parkinson acknowledged that he has no idea whether the caulk he used was compatible with the synthetic stucco surface to which it was applied.

The third problem involved window six. In early 1992, the Parkinsons hired a painter who "power washed" the house and discovered that window six, which was one of the windows around which Mr. Parkinson had previously replaced some brick mold, was rotted in the sash, jamb and part of the sill. Mr. Parkinson became concerned and called Mr. Dombroski. Mr. Dombroski came to the house and, after examining window six, told Mr. Parkinson that the jamb would have to be repaired, the sashes and the brick mold were going to have to be replaced, and the sill was going to have to be spliced or replaced. Mr. Dombroski told Mr. Parkinson that the water intrusion at window six was coming from the failure of the caulk joint located between the brick mold and the stucco. Mr. Parkinson testified that at this point, he "began to wonder what would happen if this occurred at other places."

Although Mr. Dombroksi examined the window, he did not repair the window. Instead, Mr. Parkinson again made the repairs himself. This repair work involved removing two sashes and a jamb, sawing through a portion of the sill to remove it, replacing that portion of the sill and two sashes and a jamb, and resealing the window. Mr. Parkinson testified that he performed the work himself because "[i]t didn't appear that complicated." However, John Bahr, P.E., a registered professional engineer who inspected the house, testified that window six had undergone "extensive repair" behind the surface cladding between the inner and outer walls.

After performing this repair work to window six, Mr. Parkinson remained concerned and decided, based on viewing other houses, to attempt to protect the windows from water by having a band of stucco built around the perimeter of each window extending beyond the brick mold and covering up the caulk joint. Mr. Parkinson testified that he hired Mr. Ricks of Ricks Construction, Inc. ("Ricks") to perform this job. However, Mr. Parkinson conceded that he did not ask Mr. Ricks whether this idea—adding a band of stucco to protect the windows from water intrusion—would, in fact, work. Moreover, although the contract with Ricks provides that the purpose of the work was "to create a waterproof barrier around the perimeter of all windows and doors," a memorandum attached to the contract, written by Ricks, states: "To create a waterproof intersection, caulk is necessary and is not included in our scope of work." Mr. Parkinson proceeded to hire Ricks to perform this work despite the fact that Ricks told him that the stucco bands would not protect the windows from water intrusion without caulk.

Ricks apparently started the job in March of 1993. However, Mr. Parkinson fired Ricks and hired PSC in April of 1993 to complete the job. The contract with PSC, dated 7 April 1993, provides the following description of the work to be performed:

[1.] Straightening and smoothing previously base coated window bands to the best of our ability with the existing work[.]

[2.] Additional base coat applied to bands where needed[.]

[3.] Finish coat applied to window bands[.]

[4.] Caulking applied where requested by the homeowner[.]

At the time he signed the contract, Mr. Parkinson attached a letter to the contract, dated 12 April 1993, which states that "[t]he purpose of

EVERTS v. PARKINSON

[147 N.C. App. 315 (2001)]

the scope of work described is to create a waterproof perimeter on all doors and windows to which the banding is applied." This letter provided a space for the signature of a PSC representative to indicate acceptance, but the letter was not signed by anyone from PSC.

Mr. Best, the president of PSC, testified during his deposition that Mr. Parkinson hired PSC only "to straighten up the bands and put finish coat on a job that somebody else had started," and that the bands were for "decorative" purposes only. Mr. Best testified that PSC did receive Mr. Parkinson's letter attached to the contract, and that, in response, PSC "informed Mr. Parkinson . . . that the coatings that go over the band aren't waterproof and . . . that the bands aren't going to add any waterproofness to his house and that . . . all we were providing was decorative banding." Mr. Best testified that this is why a representative from PSC did not sign Mr. Parkinson's letter. According to Mr. Best, Mr. Parkinson told PSC to "go ahead with the work anyway." Also, although the contract provides that PSC was to apply caulking "where requested by the homeowner," Mr. Parkinson conceded that he did not specifically direct PSC to apply caulking anywhere, and does not know whether they ever did apply caulking anywhere. Mr. Best testified that PSC did not use or apply any caulk in finishing these stucco bands. Finally, Mr. Best also testified that the "decorative" stucco bands, once built, could have had the effect of concealing the original sealant joint, or intersection, between the EIFS and the window. Engineer John Bahr similarly testified that the decorative band of synthetic stucco did, in fact, "carefully conceal[] the joints around each window and door."

At the time of sale, the Parkinsons did not inform plaintiffs about the Becker window lights that Mr. Parkinson had replaced, the brick mold repair work that Mr. Parkinson had performed on a number of windows and doors, or the extensive repair work to window six that Mr. Parkinson had performed. Nor did they inform plaintiffs about the construction of the stucco bands by Ricks and PSC. Mr. Parkinson testified that he did not disclose this information, or provide plaintiffs with any of the documents that he possessed regarding any repair work that had been done, because he did not feel that he had an obligation to do so. He also acknowledged that the stucco bands that were added to all of the windows covered up the same joint that had failed in window six, and that, in order for plaintiffs or an inspection company hired by plaintiffs to have examined those joints, they would have had to remove the stucco bands from each window. He further acknowledged that the house had not sold the first time it was

EVERTS v. PARKINSON

[147 N.C. App. 315 (2001)]

put on the market, and that it was put on the market a second time at almost exactly the time that the stucco bands were completed, and acknowledged that at least one of the reasons they decided to sell the house was because of the maintenance and repair work required as a result of the rotting brick mold problem. Viewing the evidence in the light most favorable to plaintiffs, we believe there are genuine issues of material fact as to whether Mr. Parkinson engaged in conduct with the intent to deceive. However, we believe there is no evidence in the record that would support a finding that Mrs. Parkinson engaged in conduct with an intent to deceive. Thus, we address the remaining fraud issues only as to Mr. Parkinson.

### b. Reasonable Reliance

Mr. Parkinson contends that plaintiffs have failed to establish reasonable reliance for purposes of their fraud claim. In general, the reason for requiring a showing of reasonable reliance in cases of fraud has been explained in the following way:

> The right to rely on representations is inseparably connected with the correlative problem of the duty of a representee to use diligence in respect of representations made to him. The policy of the courts is, on the one hand, to suppress fraud and, on the other, not to encourage negligence and inattention to one's own interest.

*Calloway v. Wyatt*, 246 N.C. 129, 134-35, 97 S.E.2d 881, 886 (1957). However, in the specific context of a claim of fraud based upon a breach of a duty to disclose a material fact, we believe that the reasonable reliance requirement is unnecessary because it is virtually identical to what is already required to establish that a duty to disclose exists in the first place.

A duty to disclose material facts arises "[w]here material facts are accessible to the vendor only, *and he knows them not to be within the reach of the diligent attention, observation and judgment of the purchaser." Brooks*, 253 N.C. at 217, 116 S.E.2d at 457 (emphasis added). In other words, in order to establish fraud based upon a seller's failure to disclose material defects, a buyer must, in part, show that the material defects were "not discoverable in the exercise of the buyer's diligent attention or observation." *Carver*, 78 N.C. App. at 512-13, 337 S.E.2d at 128.

This requirement serves the same purpose as the reasonable reliance requirement in other fraud claims: it precludes a claim of

fraud where a plaintiff has been negligent or inattentive to his own interests. This is because, if a defect *is* discoverable in the exercise of a buyer's diligent attention or observation, and the buyer fails to employ diligent attention or observation (and thus fails to discover the defect), a claim for fraud will not stand because in such a situation there is no duty on the part of the seller to disclose the defect. *See, e.g., Clouse v. Gordon,* 115 N.C. App. 500, 445 S.E.2d 428 (1994) (seller did not disclose that the property was subject to flooding, but no duty to disclose because fact that property was located in flood plain was of public record, buyers knew creek ran through property, buyers had full opportunity to view topography of property, including fact that mall and four-lane thoroughfare were located upstream from creek on property, and buyers had full opportunity to inquire of other residents whether there were flooding problems).

Our holding—that reasonable reliance is a redundant and unnecessary element in the context of a claim of fraud based on a failure to disclose a material fact—is supported by this Court's opinion in *Rosenthal v. Perkins,* 42 N.C. App. 449, 257 S.E.2d 63 (1979). In *Rosenthal,* this Court held that the plaintiffs' fraud claim was properly dismissed because, among other things, the plaintiffs had failed to allege in their pleadings that they reasonably relied upon the defendants' concealment. *See id.* at 452, 257 S.E.2d at 66. However, the Court then stated that this "reasonable reliance" requirement would have been sufficiently pleaded if plaintiffs had alleged that the material fact was not discoverable "by the exercise of reasonable diligence." *Id.* (citing *Calloway,* 246 N.C. 129, 97 S.E.2d 881). This formulation of "reasonable reliance" is virtually identical to the requirement that the seller know that a defect "is not discoverable in the exercise of the buyer's diligent attention or observation," *Carver,* 78 N.C. App. at 512-13, 337 S.E.2d at 128, and is therefore redundant to the requirements for establishing the existence of a duty to disclose in the first place.

Our holding also finds persuasive support in N.C.P.I., Civ. 800.00 ("Fraud"), which provides the following explanation regarding the element of reasonable reliance in a claim for fraud based on concealment of a material fact:

> The plaintiff's reliance would be reasonable if, under the same or similar circumstances, a reasonable person, in the exercise of ordinary care for his own welfare, would not have discovered the concealment.

Again, this definition of "reasonable reliance" is virtually identical to the requirement that the material fact be a fact that is not "discoverable in the exercise of the buyer's diligent attention or observation." *Carver*, 78 N.C. App. at 512-13, 337 S.E.2d at 128. Finally, our holding finds support in two cases in which reasonable reliance was simply not required as an element in establishing fraud based on a seller's breach of a duty to disclose material defects. *See Brooks*, 253 N.C. 214, 116 S.E.2d 454; *Carver*, 78 N.C. App. 511, 337 S.E.2d 126 (specifically addressing the elements that must be alleged to withstand a Rule 12(b)(6) motion to dismiss a claim of fraudulent concealment of a material defect).

Viewing the evidence in the light most favorable to plaintiffs, we believe there are genuine issues of material fact as to whether the alleged defects were discoverable in the exercise of plaintiffs' diligent attention or observation and, therefore, whether Mr. Parkinson had a duty to disclose the defects. The record contains an affidavit from John Tullous, a licensed residential home inspector who performed an inspection on the house in July of 1993 at the request of plaintiffs prior to purchase. He testified that, at the time of the inspection, he "did not observe any rot or water infiltration," or "any problems with the exterior windows or doors on the house." He further testified that the "decorative bands," which had been installed around the windows before his inspection, "concealed the joint where the synthetic stucco met the window brick molding," and that, as a result, he "was not able to visually observe the perimeter joints of the exterior windows." He also stated that he "was not informed by the owner or the owner's realtor of any moisture intrusion problems involving the windows or window joint perimeter prior to [his] inspection," and that such information is "crucial information that [he] would have needed to know." He testified that if he had been informed of moisture intrusion problems, his company would have performed an intrusive test by inserting a moisture probe into the synthetic stucco, but that it was not the normal practice of his company to perform this kind of test unless they were provided with information about water intrusion problems.

Viewing the evidence in the light most favorable to plaintiffs, we believe that a jury could infer from the evidence that: the alleged material defects were known to Mr. Parkinson; Mr. Parkinson knew that the defects, of which plaintiffs were unaware, were not discoverable in the exercise of plaintiffs' diligent attention or observation; Mr. Parkinson, therefore, had a duty to disclose the existence of the

defects to plaintiffs, which he failed to do; Mr. Parkinson's breach of the duty to disclose was reasonably calculated to deceive and undertaken with the intent to deceive; plaintiffs were in fact deceived; and this deception resulted in damage to plaintiffs. Therefore, as to Mr. Parkinson, we reverse the trial court's grant of summary judgment on the claim of fraud, and we remand so that this claim may be heard and determined by the trier of fact. As to Mrs. Parkinson, we affirm the trial court's grant of summary judgment.

### 2. Negligent Misrepresentation

[3] "The tort of negligent misrepresentation occurs when in the course of a business or other transaction in which an individual has a pecuniary interest, he or she supplies false information for the guidance of others in a business transaction, without exercising reasonable care in obtaining or communicating the information." *Fulton v. Vickery*, 73 N.C. App. 382, 388, 326 S.E.2d 354, 358, *disc. review denied*, 313 N.C. 599, 332 S.E.2d 178 (1985). Here, plaintiffs argue that the Parkinsons supplied false information to them by representing in the contract (1) that the structural components of the home "shall be performing the function for which intended and shall not be in need of immediate repair," and (2) that "there shall be no unusual drainage conditions or evidence of excessive moisture adversely affecting the structure."

These statements in the contract appear in Paragraph Eight, which states:

INSPECTIONS: Unless otherwise stated herein: (i) the electrical, plumbing, heating and cooling systems and built-in appliances, if any, shall be in good working order at closing; (ii) the roof, gutters, structural components, foundation, fireplace(s) and chimney(s) shall be performing the function for which intended and shall not be in need of immediate repair; (iii) there shall be no unusual drainage conditions or evidence of excessive moisture adversely affecting the structure(s); and (iv) the well/water and septic/sewer systems, if any, shall be adequate, not in need of immediate repair and performing the function for which intended. Buyer shall have the option to have the above listed systems, items and conditions inspected . . . , but such inspections must be completed in sufficient time before closing to permit any repairs to be completed by closing. If any repairs are necessary, Seller shall have the option of (a) completing them, (b) providing

for their completion, or (c) refusing to complete them. If Seller elects not to complete or provide for the completion of the repairs, then Buyer shall have the option of (d) accepting the Property in its present condition, or (e) terminating this contract, in which case the earnest money shall be refunded. Closing shall constitute acceptance of each of the systems, items and conditions listed in (i), (ii), (iii) and (iv) above in its then existing condition unless provision is otherwise made in writing.

Paragraph Eight essentially provides that the buyer, after signing the contract but prior to closing, is entitled to have the structural components of the house inspected, and that, following any such inspection, if repairs are necessary and if the seller refuses to complete such repairs, the buyer may either accept the property or terminate the contract. Thus, Paragraph Eight sets forth a series of steps which, if followed by the buyer but not complied with by the seller, allow the buyer to terminate the contract. In other words, Paragraph Eight, taken as a whole, is a condition precedent.

" 'A condition precedent is an event which must occur before a contractual right arises, such as the right to immediate performance.' " *In re Foreclosure of C and M Investments*, 346 N.C. 127, 132, 484 S.E.2d 546, 549 (1997) (citation omitted). "In negotiating a contract the parties may impose any condition precedent, a performance of which condition is essential before the parties become bound by the agreement." *Federal Reserve Bank v. Manufacturing Co.*, 213 N.C. 489, 493, 196 S.E. 848, 850 (1938). " ' "Breach or non-occurrence of a condition prevents the promisee from acquiring a right, or deprives him of one, but subjects him to no liability." ' " *C and M Investments*, 346 N.C. at 132, 484 S.E.2d at 549 (citations omitted).

The statements which plaintiffs contend constitute representations by the Parkinsons are not representations upon which liability may be based; instead, they are statements made within the context of a condition precedent and, as such, may not be the basis for liability. Because we hold that these statements, taken in context, do not constitute representations by the Parkinsons upon which liability may be based, and because the record discloses no other representations by the Parkinsons, plaintiffs have failed to establish the elements of negligent misrepresentation as a matter of law. Summary judgment as to this claim is therefore affirmed.

3. Breach of Contract

[4] The contract here included an Addendum, signed by plaintiffs and the Parkinsons, which provided in part:

> 1. In addition to the Standard Inspections listed in Paragraph #8 in the Standard Provisions, it is also a condition of the purchase that the following be performed:
>
> . . .
>
>> D. Seller to provide copies of builder's construction records pertaining to materials and type of construction methods used to prevent excessive moisture build-up and damage due to any wood destroying insect.

Plaintiffs contend that the Parkinsons failed to provide to plaintiffs certain documents that were in their possession, which documents should have been provided pursuant to Paragraph 1D of the Addendum, and that the Parkinsons thereby breached the contract. However, as expressly set forth at the outset of Paragraph 1 of the Addendum, the items listed in Paragraph 1 were conditions of the purchase. As stated above, the failure of a seller to comply with conditions precedent in a contract may allow the buyer to terminate the contract prior to closing, but may not subject the seller to liability. *Id.* Thus, the Parkinsons may not be subjected to liability for breaching the contract based on a failure to comply with Paragraph 1D, since Paragraph 1D was a condition precedent. We therefore affirm the trial court's grant of summary judgment in favor of the Parkinsons as to plaintiffs' claim for breach of contract.

4. Breach of Express and Implied Warranties

[5] Plaintiffs' complaint alleges that the Parkinsons provided an express warranty to plaintiffs within the contract that, among other things, the roof, gutters, and other structural components of the home were in sound condition. Regardless of whether this allegation may be true, we do not believe plaintiffs here may maintain an action for breach of express warranty against the Parkinsons based on this sale of real property. Breach of express warranty claims are generally governed by the North Carolina Uniform Commercial Code ("UCC"), codified in Chapter 25 of our General Statutes. *See* N.C. Gen. Stat. §§ 25-1-101 to 25-11-108 (1999); Charles E. Daye and Mark W. Morris, *North Carolina Law of Torts* § 26.32, at 459 (1991). Article 2 of the UCC ("Sales") applies only to contracts for the purchase or sale of

"goods," and it is well-established that "[r]eal estate does not fall under the U.C.C.'s definition of 'goods.' " *Cudahy Foods Company v. Holloway*, 55 N.C. App. 626, 628, 286 S.E.2d 606, 607 (1982) (citing N.C. Gen. Stat. § 25-2-105). Plaintiffs have failed to cite, and we have been unable to find, any authority indicating that a breach of express warranty claim may be brought based upon alleged warranties in a contract for the sale of a dwelling or real property, as opposed to goods. *See* John N. Hutson, Jr. and Scott A. Miskimon, *North Carolina Contract Law* § 15-2, at 698 (2001) ("[a]n express warranty is a promise made by a seller to a buyer which relates to the title, condition or quality of the *goods* being sold." (Emphasis added)). Indeed, at least one case has implied precisely the opposite. *See Stanford v. Owens*, 46 N.C. App. 388, 392-93, 265 S.E.2d 617, 620-21, *disc. review denied*, 301 N.C. 95, —— S.E.2d —— (1980). It appears that a claim for breach of contract, rather than breach of express warranty, is the proper cause of action available to plaintiffs in such cases. We conclude that the trial court properly granted summary judgment in favor of the Parkinsons on plaintiffs' breach of express warranty claim.

[6] The complaint also alleges that the Parkinsons breached an implied warranty of habitability.

> The doctrine of implied warranty of habitability requires that a dwelling and all of its fixtures be "sufficiently free from major structural defects, and . . . constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction." The test for breach of implied warranty of habitability is "whether there is a failure to meet the prevailing standard of workmanlike quality" in the construction of the house . . . .

*Allen v. Roberts Constr. Co.*, 138 N.C. App. 557, 571, 532 S.E.2d 534, 543 (citation omitted), *disc. review denied*, 353 N.C. 261, 546 S.E.2d 90 (2000). A review of our case law indicates that this cause of action may only be maintained against a defendant who is both the builder and the vendor of a dwelling. *See, e.g., Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 225 S.E.2d 557 (1976); *Medlin v. Fyco, Inc.*, 139 N.C. App. 534, 534 S.E.2d 622 (2000), *disc. review denied*, 353 N.C. 377, 547 S.E.2d 12 (2001); *Lumsden v. Lawing*, 107 N.C. App. 493, 421 S.E.2d 594 (1992); *Lapierre v. Samco Development Corp.*, 103 N.C. App. 551, 406 S.E.2d 646 (1991); *George v. Veach*, 67 N.C. App. 674, 313 S.E.2d 920 (1984); *Lyon v. Ward*, 28 N.C. App. 446, 221 S.E.2d 727 (1976). The Parkinsons are not "builder-vendors," but are merely ordi-

nary vendors or casual sellers of a single dwelling. Thus, plaintiffs essentially ask this Court to dramatically expand the implied warranty of habitability doctrine, and this we decline to do. We note that this position is consistent with the approach taken in other jurisdictions. *See* Frona M. Powell and Jane P. Mallor, *The Case for an Implied Warranty of Quality in Sales of Commercial Real Estate*, 68 Wash. U. L.Q. 305, 337 n.71 (1990) ("Courts have steadfastly refused to apply the implied warranty in sales by 'ordinary vendors' or 'casual sellers.' This is consistent with the supporting rationale that builder-vendors have superior knowledge of the construction process and materials, ability to avoid defects, and ability to bear risk."); William K. Jones, *Economic Losses Caused by Construction Deficiencies: The Competing Regimes of Contract and Tort*, 59 U. Cin. L. Rev. 1051, 1061 (1991) ("The warranty is applicable to sellers engaged in the business of constructing houses for sale. . . . Warranties are not implied in the sale of 'used' residences by their owners." (Footnotes omitted)). Therefore, we conclude that plaintiffs may not maintain an action against the Parkinsons for breach of an implied warranty of habitability, and summary judgment was properly granted on this claim as well.

## II. ATD

**[7]** We next review plaintiffs' claim of willful and wanton negligence against ATD. Plaintiffs' complaint alleges that ATD was negligent in two separate respects. First, the complaint alleges that ATD was "willfully and wantonly negligent in [its] construction of the house" in November of 1988. Second, the complaint alleges that ATD was negligent in its inspection of the house in May of 1992. ATD filed a motion for summary judgment, contending that there were no genuine issues of material fact, and that plaintiffs' claim was barred by the applicable statutes of limitations and repose. This motion was granted.

We need not reach the question of whether plaintiffs' claim against ATD is barred by the statute of repose because we believe plaintiffs are unable to establish an essential element of their claim, namely a legal duty of care, and that summary judgment was therefore properly granted. In their brief, plaintiffs argue only that ATD was willfully and wantonly negligent in its inspection of a single window in May of 1992. Plaintiffs do not argue that ATD was negligent in its construction of the house in 1988. Plaintiffs' failure to present any argument on appeal regarding ATD's alleged negligence in constructing the house constitutes an abandonment of one of the two theories

**EVERTS v. PARKINSON**

[147 N.C. App. 315 (2001)]

upon which plaintiffs' claim against ATD was originally premised. *See* N.C.R. App. P. 28(a); *Crockett v. Savings & Loan Assoc.*, 289 N.C. 620, 632, 224 S.E.2d 580, 588 (1976) ("[u]nder Rule 28, . . . appellate review is limited to the arguments upon which the parties rely in their briefs"). The only contention before us, then, is that ATD was willfully and wantonly negligent in its inspection of a window in 1992.

The complaint alleges that on this occasion, ATD was willfully and wantonly negligent in "[f]ail[ing] to repair known leaks in the EIFS system," in "[f]ail[ing] to adequately investigate potential water intrusion into the home and damage therefrom," and in "improperly and incorrectly assess[ing] the nature and extent of said intrusion and damage." The evidence tends to establish that in approximately May of 1992, Mr. Parkinson called Mr. Dombroski, the president of A.T.D. Construction Company, and asked him to come to the house to look at "a problem with some brick molding" and to "give him a price on replacing it." Mr. Dombroski went to the house and examined a particular window where a piece of brick mold had been removed by Mr. Parkinson. Mr. Dombroksi saw "some discoloration" in the "sheathing plywood" and some deterioration in the left end of the window sill. Mr. Dombroski told Mr. Parkinson that he would "put together a price" for replacing the brick mold and replacing the sill. Mr. Parkinson did not ask Mr. Dombroski to look at any other windows, and Mr. Dombroski did not ultimately do any repair work on any of the windows. Based on these facts, and resolving any inconsistencies in the evidence in favor of plaintiffs, we believe ATD was entitled to summary judgment as a matter of law because plaintiffs cannot establish that ATD owed plaintiffs a legal duty of care under these circumstances.

The law imposes upon the builder of a house the general duty of reasonable care in constructing the house to anyone who may foreseeably be endangered by the builder's negligence, including a subsequent owner who is not the original purchaser. *See Oates v. JAG, Inc.*, 314 N.C. 276, 280-81, 333 S.E.2d 222, 225-26 (1985). Pursuant to *Oates*, ATD, as the builder of the house, owed a general duty of reasonable care to plaintiffs *in its construction of the house in 1988*. However, as noted above, plaintiffs on appeal argue only that ATD was willfully and wantonly negligent *in its inspection of the window, which occurred over three years after the house was constructed*. Thus, plaintiffs essentially request this Court to significantly extend the rule in *Oates* and hold that the builder of a house, who is called upon by the original owner to inspect the house for damage more than three

years after the house is completed, and who performs no repair work on the house at that time, owes a legal duty of care to a subsequent owner *in its inspection of the house*. This we decline to do. Because plaintiffs are unable to establish the existence of a legal duty of care owed to plaintiffs by ATD under the circumstances, summary judgment was properly granted.

## III. PSC

[8] Finally, we review plaintiffs' negligence claim against PSC. Plaintiffs' complaint states that PSC was "retained by the defendant Parkinsons to conduct certain post-construction repair work on the EIFS system on the home" in 1993. The complaint alleges that PSC breached a duty of care to plaintiffs by

> negligently and improperly attempting repairs which concealed, rather than rectified, the damages resulting from [previous work performed on the house]; negligently failing to report the defects in the EIFS system when called upon to inspect and repair the home; and by negligently failing to advise the Parkinsons of the need for further inspection and testing to verify the nature and extent of the water intrusion and damage to the home.

PSC denied these allegations and filed a motion for summary judgment, contending that there were no genuine issues of material fact, and that plaintiffs' claims were barred by the statute of limitations. This motion was granted. We need not reach the question of whether plaintiffs' claim is barred by the statute of limitations because we believe PSC did not owe a duty of care to plaintiffs, and because, even if it did, the evidence produced during discovery fails to forecast any negligence on the part of PSC.

We are unable to find, and plaintiffs have not directed our attention to, any cases holding that a party who undertakes to *repair* a house under contract with the original owner owes a duty of care to a subsequent purchaser of the house. As with plaintiffs' claim against ATD, such a holding would require us to extend the rule in *Oates*, in which case it was held that the law imposes upon the *builder* of a house the general duty of reasonable care in *constructing* the house to anyone who may foreseeably be endangered by the builder's negligence, including a subsequent owner. *See Oates*, 314 N.C. 276, 333 S.E.2d 222. We decline to so extend the rule in *Oates*. We believe PSC did not owe plaintiffs a duty of care recognized by law under the circumstances.

Moreover, even if we were to hold that PSC owed a duty of care to plaintiffs, we believe plaintiffs failed to present any evidence during discovery to forecast negligence on the part of PSC. Mr. Everts testified during his deposition that he "didn't really know" what the role of PSC was in the construction of the home until he received a copy of the contract between PSC and Mr. Parkinson. Mr. Everts then realized that PSC was hired only "to finish a job" that another company had started, and that "the application of the stucco was [already] there" at the time PSC performed its work. Mr. Everts testified that he has no reason to believe that PSC failed to perform the work that they had agreed to perform in their contract with Mr. Parkinson. In addition, when referred to the portions of the complaint alleging that PSC breached a duty to perform "inspection" work on the house, and when asked what "inspection" work he believes PSC had a duty to perform, Mr. Everts stated: "Well, I can tell you that this was composed before we had the information at hand, and, so, I would say that, according to what I've read, this wouldn't apply." We believe that the trial court properly granted summary judgment in favor of PSC on plaintiffs' negligence claim.

In summary, we reverse the trial court's order granting summary judgment on plaintiffs' claim of fraud against Mr. Parkinson and we remand for further proceedings on this claim. As to the claim of fraud against Mrs. Parkinson, and as to all other claims against the Parkinsons (negligent misrepresentation, breach of contract, breach of express and implied warranties) we affirm the trial court's grant of summary judgment in favor of the Parkinsons. We affirm the trial court's order granting summary judgment in favor of defendants ATD and PSC.

Affirmed in part, reversed in part and remanded.

Judges TYSON and SMITH concur.